Tina HOBSON, et al., Plaintiffs,

v.

Charles D. BRENNAN, et al., Defendants.

Civ. A. No. 76–1326.

United States District Court, District of Columbia.

Dec. 16, 1985.

Anne Pilsbury, Washington, D.C., Armand Derfner, Charleston, S.C., for plaintiffs.

David H. White, Dept. of Justice, Washington, D.C., J. Frederick Sinclair, Alexandria, Va., Brian P. Gettings, R. Scott Caulkins, Cohen, Gettings, Alper & Dunham, Arlington, Va., William W. Greenhalgh, Patricia L. Maher, Earl J. Silbert, Schwalb, Donnenfeld, Bray & Silbert, P.C., A. Raymond Randolph, Christopher L. Varner, Randolph & Fruitt, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Defendants are former agents of the Federal Bureau of Investigation ("FBI") who were involved in varying degrees in the FBI COINTELPRO[1] program. In June 1984, the Court of Appeals affirmed this Court's order denying defendants' motion for a judgment notwithstanding a jury verdict against them. *Hobson v. Wilson, supra.* The jury found that defendants had engaged in a complex conspiracy, actionable under 42 U.S.C. § 1985(3),[2] to violate First Amendment rights of certain plaintiffs. The Court of Appeals remanded the case to this Court for redetermination of damages and expungement of certain FBI files. On March 25, 1985, the Supreme Court denied defendants' petition for a writ of certiorari. Thereafter, pursuant to the Court of Appeals' remand order, this Court resumed administration of the case.

In the course of these resumed proceedings, defendants moved to dismiss the complaint on the theory that it was time barred by a "specially prescribed" District of Columbia statute of limitations which provides a one-year limitations period "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment." D.C.Code § 12–301(4) (1981). Defendants argue that, in addition to the contentions which have previously been made on this issue to this Court,[3] the Court of Appeals,[4] and the Supreme Court,[5] the Supreme Court's April 17, 1985 decision in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254, now requires application of the one-year statute rather than the three-year statute which was applied by this Court and upheld by the Court of Appeals. Defendants and plaintiffs agree that defendants' renewed attempt to raise this issue is not precluded by law of the case doctrine, as there has been an intervening change in applicable law. *See* Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Memorandum") at 3 n. 1; Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defendants' Memorandum") at 6 n. 3. All of the defendants renew their motion to dismiss on the ground that the entire cause of action

1. COINTELPRO, described by our Court of Appeals as "notorious," had two components—"COINTELPRO-New Left" (which was directed against individuals opposing American involvement in the Vietnam War and other related policies of the national Government) and "COINTELPRO-Black Nationalist" (directed against individuals seeking improvement of civil rights for Blacks). *See Hobson v. Wilson,* 737 F.2d 1, 9–13 (D.C.Cir.1984) (Edwards, Scalia and Starr, JJ.), *cert. denied sub nom., Brennan v. Hobson,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

2. 42 U.S.C. § 1985(3) (Supp. V 1981) provides in pertinent part that:
 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

privileges and immunities under the laws ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

3. *See Hobson v. Wilson,* 556 F.Supp. 1157, 1174 (D.D.C.1982).

4. *See Hobson v. Wilson,* 737 F.2d 1, 32 and n. 99 (D.C.Cir.1984).

5. *Brennan v. Hobson,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), petition for writ of certiorari denied.

is time barred. In addition, defendant Pangburn has renewed his motion for a new trial, in part because the Court of Appeals set aside the verdict against the members of the District of Columbia Metropolitan Police Department, whom the jury had also found to have been involved in a related conspiracy against plaintiffs.

## I.

There is no federal statute of limitations specifically applicable to actions to redress constitutional torts. The federal courts must therefore "borrow" the local common law as modified or changed by statute.[6] *See Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984). The District of Columbia statute of limitations provides in relevant part that:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> . . . .
>
> (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment —1 year.
>
> . . . .
>
> (8) for which a limitation is not otherwise specially prescribed—3 years.

D.C.Code §§ 12–301(4) and (8) (1981).

Defendants first pleaded the one-year provision to Judge John H. Pratt (to whom this case was originally assigned). Judge Pratt denied the plea without prejudice. *Hobson v. Wilson*, No. 76–1326 (D.D.C. Nov. 9, 1979). They unsuccessfully renewed the one-year statute plea in this

Court both before and after the verdicts against them. *See* Memorandum and Order of October 29, 1981 at 2; 556 F.Supp. at 1174. The defendants' challenge to the denial of their motions for a directed verdict on statute of limitations grounds focused on the complex fraudulent concealment issue which had been presented to the jury by instructions and by a special verdict form. *See* 556 F.Supp. at 1174–79; 737 F.2d at 32–42. Only defendant Jones argued in the Court of Appeals that the one year rather than the three year statute applied. Nevertheless, before commencing its discussion of the fraudulent concealment issue the Court of Appeals ruled that:

> When no federal statute of limitations governs the period of repose for actions brought under the Civil Rights Act, or under the rationale of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] ... (1971) a federal court must look to the limitations period applicable to the most nearly analogous state cause of action. [Footnote omitted.] On that basis, it is clear that the three-year limitations period provided in D.C.Code Ann. § 12–301(8) (1981) controls this case.[99] [Footnote quoted below.]

737 F.2d at 32. In an explanatory footnote, the Court of Appeals went on to state:

[99.] Section 301 provides a three-year limitations period for claims "... for which a limitation is not otherwise specially prescribed." D.C.Code Ann. § 12–301(4) (1981) provides a one-year limitations period "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false impris-

---

6. 42 U.S.C. § 1988 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the

provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty....

onment," and is inapposite. *McClam v. Barry,* 697 F.2d 366 (D.C.Cir.1983), is not to the contrary. *McClam* adopted the one-year limitations period because the constitutional claim was for an assault, which is specifically identified in D.C. Code Ann. § 12–301(4). Indeed, *McClam* specifically distinguished an earlier *Bivens* action [*Eikenberry v. Callahan,* 653 F.2d 632, 635 n. 11 (D.C.Cir.1981)] based on the First Amendment, which had adopted the three-year period. *Id.* at 372. We reject, as based on a misreading of *McClam,* any argument that *McClam* decided that all *Bivens* actions are controlled by the one-year limitations period.

*Id.*

All defendants then pursued the one-year limitations plea in their Petition for a Writ of Certiorari. The petition argued that:

The decision below conflicts with *Garcia v. Wilson,* 731 F.2d 640 (10th Cir. 1984), certiorari granted [—— U.S. ——, 105 S.Ct. 79, 83 L.Ed.2d 28] (Oct. 1, 1984).... The court in this case borrowed the three-year limitations period in D.C.Code § 12–301(8) for claims not otherwise "specifically prescribed," rather than the one-year period in D.C.Code § 12–301(4) applicable to actions "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment." ... *Garcia* holds that for statute of limitation purposes, actions seeking redress for violation of constitutional rights shall be treated as actions "for injury to personal rights." 731 F.2d at 651. Accordingly, the court in *Garcia* looked to the state statute applicable to suits for "injury to the person or reputation." For the reasons stated in *Garcia v. Wilson,* the court of appeals in this case therefore should have applied D.C.Code § 12–

201(4), which provides a one-year limitations period for intentional injury to personal rights and reputation. [footnote omitted]

Petition for a Writ of Certiorari at 22.[7]

*Garcia v. Wilson* originated as a section 1983 case brought in New Mexico against a state police officer who allegedly beat plaintiff and sprayed him with tear gas. Also named as a defendant was the Chief of Police, who, plaintiff claimed, failed to adequately supervise the officer directly engaged in the alleged violence. The District Court denied a motion to dismiss the case as time-barred by the New Mexico two-year statute of limitations applicable to its Tort Claims Act. Instead, the District Court selected New Mexico's residual four-year statute. The Court of Appeals affirmed, but selected a different New Mexico statute of limitations—the three-year statute governing "actions for an injury to the person or reputation of any person." N.M.Stat.Ann. § 37–1–8 (1978).

In *Wilson v. Garcia, supra,* Justice Stevens, speaking for himself and six of his colleagues, affirmed the Tenth Circuit ruling that section 1983 (42 U.S.C. § 1983), is "in reality, 'an action for injury to personal rights.'" 105 S.Ct. at 1941. Citing the federal interest in uniformity and certainty, the Court construed § 1988 as "a directive to select, in each State, the one most appropriate statute of limitations for all section 1983 claims." *Id.* at 1947. The *Wilson* Court approved the Tenth Circuit's conclusion that "the tort action for the recovery of damages for personal injuries is the best alternative available" for general characterization of section 1983 actions. *Id.* at 1947. The Court further observed that:

The characterization of all § 1983 actions as involving claims for personal injuries

---

**7.** Defendants' Petition for a Writ of Certiorari was filed January 14, 1985, the same day that the Supreme Court heard argument in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). On March 25, 1985, while *Wilson* was under advisement in the Supreme Court, that court denied the petition for certiorari in this case. On April 17, 1985, the Supreme Court

announced its decision in *Wilson.* If Supreme Court actions on petitions for certiorari had precedential value, it could reasonably be inferred that the Court did not find any conflict between our Court of Appeals' decision in this case and the Supreme Court's decision in *Wilson,* then in an advanced stage of completion.

minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983. General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today....

*Id.* at 1949 (footnote omitted). The *Wilson* Court directed that the selection of the appropriate statute in each state should balance between "the substantive policies underlying the federal claim and the policies of repose." *Id.* at 1944 (footnote omitted). The Court, focusing on section 1983 and without mention of section 1985, noted in this connection that "[t]he high purposes of this unique remedy [§ 1983] make it appropriate to accord the statute 'a sweep as broad as its language.'" *Id.* at 1945 (footnote omitted).

Before *Wilson* required selection of a single limitations period for all § 1983 claims, it was possible for a federal court to select the applicable local statute according to the nature of the underlying claim. Thus, our Court of Appeals selected the one-year statute [D.C.Code § 12-301(4)] for an assault claim in a simple police brutality *Bivens* action because the statute specially addressed assault and battery. *McClam v. Barry*, 697 F.2d 366, 376 (D.C. Cir.1983).[8] In the same opinion, the Court of Appeals distinguished its earlier decision in *Eikenberry v. Callahan, supra,* 653 F.2d at 635 n. 11 (D.C.Cir.1981), to apply the three-year statute [D.C.Code § 12-

301(8)] in a *Bivens* claim[9] involving First Amendment rights. *McClam,* 697 F.2d at 372. *Wilson* forecloses such flexibility: It is now necessary for the federal courts to select from the options made available by local law, one umbrella statute applicable to all § 1983 cases arising in each state. *See* 105 S.Ct. at 1946–47. It is not clear, however, that *Wilson* requires that the single statute selected to govern § 1983 claims also be applied to § 1985(3) and *Bivens* actions.[10] For example, in *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court noted that:

> Section 1988 does not in terms apply to *Bivens* actions, and there are cogent reasons not to apply it to such actions even by analogy. *Bivens* defendants are federal officials brought into federal court for violating the Federal Constitution. No state interests are implicated by applying purely federal law to them. While it makes some sense to allow aspects of § 1983 litigation to vary according to the laws of the states under whose authority § 1983 defendants work, federal officials have no similar claim to be bound only by the laws of the State in which they happen to work.

*Id.* at 24–25 n. 11, 100 S.Ct. at 1474–75 n. 11. *See also id.* at 24, 100 S.Ct. at 1474, quoting the decision of the Court of Appeals below ("The liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred."); *Brown v. United States, supra,*

---

**8.** *McClam's* holding on another issue, the application of D.C.Code § 12–309, was subsequently overruled. *See Brown v. United States,* 742 F.2d 1498 (D.C.Cir.1984) *(en banc), cert. denied,* —— U.S. ——, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985) (D.C.Code § 12–309, establishing a six-month notice requirement for unliquidated damage claims against the District of Columbia, does *not* apply to constitutional tort claims that are creations of federal law).

**9.** *McClam* and *Eikenberry* were *Bivens* cases, as the causes of action accrued before section 1983 became applicable to the District of Columbia. *See McClam,* 697 F.2d at 367. *See also* Pub.L. No. 96–170, § 1, 93 Stat. 1284 (1979) (Amending § 1983 to clarify that it applies to the District of Columbia). Those actions would now be cognizable under § 1983 in the District of Columbia.

**10.** The parties appear to agree that *Wilson* and its discussion of limitations for § 1983 actions apply as well to causes of action under *Bivens*. *See* Defendants' Memorandum at 4 n. 2; Plaintiffs' Memorandum at 4 n. 2. *See also McClam v. Barry, supra,* 697 F.2d at 371 n. 3. Plaintiffs do not, however, concede in their briefs that *Wilson* requires a court to apply to a conspiracy case brought under section 1985(3) the same state statute determined under *Wilson* analysis to be applicable to all section 1983 cases, nor would the Court be bound by such a concession if it had been made. Moreover, *Brown v. United States, supra,* 742 F.2d at 1500 n. 2 (discussed *infra* at 10) indicates that, in certain contexts, *Bivens* actions should *not* be governed by the same rules as § 1983 actions.

742 F.2d at 1500 n. 2 ("[S]ome of the reasons that have in the past argued for treating *Bivens* actions outside the District differently from § 1983 actions related to the national character of the federal entities challenged in the *Bivens* actions.") In short, it is not at all obvious that *Wilson* requires application in this case [involving § 1985(3) and *Bivens* claims against employees of a federal agency] of the same umbrella statute that would be applied to section 1983 actions in this jurisdiction after *Wilson*. [11]

## II.

### A.

In approving the selection of the three-year statute by the *Garcia* Court of Appeals, the Supreme Court recognized that the infinite variety of state statutes of limitations means that it is " 'the purest coincidence,' ... when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." 105 S.Ct. at 1945 (footnote omitted). For that reason it prescribed a "simple, broad characterization" of all § 1983 claims. *Id.* Assuming, without deciding, that the same local statute which applies to § 1983 claims should also apply to § 1985 and *Bivens* claims, the three-year D.C. statute (rather than the one-year statute) governs the class of cases described using the "simple, broad characterization" contemplated by *Wilson* for § 1983 claims.

By coincidence or otherwise, the limitation statutes in the District of Columbia do not offer the variety of options that are afforded by the New Mexico statutes. There is no District of Columbia statute equivalent to the New Mexico statute fixing limitations "for an injury to the person or reputation of any person." Here, the choice is between a statute fixing a one-year limitation for nine specific causes of action [D.C.Code § 12–301(4)] and a general three-year statute [D.C.Code § 12–301(8)] for all actions, including personal injury tort claims not specifically addressed in other limitations provisions.

In this very case, our Court of Appeals has strictly construed D.C.Code § 12–301(4), finding it "inapposite" and inapplicable in cases not including claims "specifically identified" in that provision. *See* 737 F.2d at 32 n. 99. *Cf. Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 807 (D.C.Cir.1984) ("Sexual extortion" claim governed by one-year statute because intertwined with assault and defamation claims subject to one-year statute). Cases cited by both parties (and the Court's independent research) support the proposition that the "institutional understanding" of lawyers and judges in this jurisdiction is that the three-year statute is *generally* applicable in personal injury actions, whereas the one-year statute applies only in cases involving the torts specifically enumerated in § 12–301(4). *See e.g., Lawrence v. Acree,* 665 F.2d 1319, 1322 n. 3 and 1323 n. 5 (D.C.Cir.1981) (Three-year statute applied to claim alleging conspiracy to prevent federal employee from performing his duties, causing him "humiliation, contempt, mental anguish, and emotional and physical distress"); *Alley v. Dodge Hotel,* 501 F.2d 880, 881–82 n. 3 (D.C.Cir.1974) ("As an action seeking recovery for personal injury, the period for bringing the action under D.C.Code § 12–301(8) would be three years...."), [*discussed further* in *Alley v. Dodge Hotel,* 551 F.2d 442, 445 n. 22 (D.C. Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct.

**11.** *Compare Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985) (*Wilson* requires selection of a single statute of limitations for § 1983 and § 1981 cases and possibly for the other Reconstruction civil rights statutes). *Wilson* addressed only section 1983. Consequently, its effect on the statute of limitations for § 1981 actions in this jurisdiction, as its effect on § 1985(3) and *Bivens* actions, is uncertain. Since 1983, courts in this jurisdiction have in § 1981 cases applied the one-year statute made applicable to discrimination claims by D.C.Code § 1–2544(a). *See Blake v. American College of Obstetricians and Gynecologists,* 608 F.Supp. 1239, 1240–43 (D.D.C.1985). *Wilson* may require reexamination of this ruling. *But see* the dissenting opinion in *Goodman* (Garth, J.) (*Wilson* requires selection of a single statute for all § 1983 cases, but permits selection of another state statute for § 1981 cases).

2684, 53 L.Ed. 277 *reh'g denied,* 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed.2d 1103 (1977)]; *Canterbury v. Spence,* 464 F.2d 772, 793 n. 126 (D.C.Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972) (D.C. Code § 12–301(8) specifies a three year limitation for all actions for which there is no other specific provision); *Burda v. National Association of Postal Supervisors,* 592 F.Supp. 273, 276 (D.D.C.1984) (Three-year limitation applied to plaintiff's claims based on fraud, conspiracy, intentional infliction of emotional distress, and violation of Fourth, Fifth, and Sixth Amendments).

## B.

*Wilson* directed selection for § 1983 purposes of the local statute which governs "[g]eneral personal injury actions, sounding in tort [which] constitute [the] major part of the total volume of civil litigation in the state courts today." *Wilson,* 105 S.Ct. at 1949. Statistics for the Federal District Court and the Superior Court for the District of Columbia demonstrate that the major part of the "personal injury" actions brought in this jurisdiction involve claims presumptively governed by three-year statutes. For example, statistics for the last three years ending June 30, maintained by the Clerk of this Court [12] show that 3,431 cases categorized as "tort cases" were terminated in the three years from June, 1982, to June, 1985. Of these 3,431 "tort cases," 3,249 were further categorized as "Tort: Personal Injury." Of the 3,249 cases in the "Tort: Personal Injury" category, only 171

were classified as "Assault, Libel, and Slander" claims that would presumptively be governed by the one-year statute. In contrast, 2,134 cases classified as "Tort: Personal Injury" (further categorized as Airplane, Airplane Product Liability, Marine, Marine Product Liability, Motor Vehicle, Motor Vehicle Product Liability, Personal Injury Medical Malpractice, Personal Injury Product Liability, and Asbestos Personal Injury Product Liability) were presumptively governed by three-year limitation statutes.[13]

Statistics (for the six months ended June, 1985) for the Superior Court of the District of Columbia [14] revealed the filing of 1,089 cases categorized as "Personal Torts" and 203 classified as "Property Torts." Of the 1,089 cases categorized as "Personal Torts," the Superior Court identified 48 as assault and battery, 15 as false arrest, and 23 as libel and slander. Thus, a total of 86 out of 1089 or about 8 percent of the personal tort actions filed in the Superior Court of the District of Columbia presumptively would have been governed by the one-year statute. In contrast, 659 cases [categorized as Personal Torts: Automobile, Malpractice (Legal and Medical), Negligence, and Other], or approximately 60 percent, should have been governed by the three-year statute.[15]

In short, it is apparent that, as a practical matter, the three-year statute, rather than the special one-year statute, establishes the general statute of limitations con-

---

**12.** The charts from which the statistics discussed here were derived are attached as Appendix A to this Memorandum.

**13.** Of the 2,134 cases, 1,349 categorized as "Tort: Personal Injury-Motor Vehicle" should have been governed (since September of 1982) by D.C.Code § 35–2111's three-year limitation; the remainder were presumptively governed by the general three-year statute. An additional 905 cases, classified only as "other personal injury," cannot without further information be described as presumptively governed by the three-year statute or the one-year statute.

**14.** The charts from which these statistics were derived are attached as Appendix B to this Memorandum.

**15.** Sixty of these cases were automobile personal injury cases presumably governed by § 35–2111. An additional 344 cases designated only as "Personal Torts: Personal Injury" probably would have been governed by the general three-year statute (as the charts clarify that they are *not* assault and battery, libel and slander, or false arrest cases), but, in the absence of more specific information, were not included in the 60% described as presumptively governed by the three-year statute. If those cases are included, the percentage of personal tort cases filed in the six months ending June, 1985 in the Superior Court and presumptively governed by the three-year statute rises to approximately 92%.

templated for actions for the recovery of damages for personal injuries in this jurisdiction. Under *Wilson* that three-year statute should thus govern § 1983 claims in the District of Columbia.

C.

■ The conclusion that the three-year limitation period is appropriately chosen as the "one most appropriate statute of limitations for all § 1983 claims" in the District of Columbia after *Wilson* is confirmed by consideration of the effect of a one-year statute on the federal interests identified by the Supreme Court.[16] Federal courts importing a state statute of limitations into such a Civil Rights Law have a "duty ... to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *See Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). In *Wilson*, the Supreme Court observed that any local law to be applied pursuant to 42 U.S.C. § 1988 must not be "inconsistent with the Constitution and laws of the United States." *Id.* 105 S.Ct. at 1942 n. 13. A federal court choosing which of two state statutes of limitations to borrow must consider "the balance that Congress would have preferred between the substantive policies underlying the federal claim and the policies of repose." *See Wilson, supra*, 105 S.Ct. at 1944, citing *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The *Wilson* Court has noted that "[t]he high purposes of this unique remedy [§ 1983] make it appropriate to accord the statute 'a sweep as broad as its language.'" *Id.* 105 S.Ct. at 1945, quoting *United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d

267 (1966). The *Wilson* Court sought to minimize "the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983." *Id.* 105 S.Ct. at 1949.

This case is a textbook example of why Congress would not have preferred the one-year limitations period advocated by defendants as the blanket statute governing all Reconstruction civil rights statute and *Bivens* actions in the District of Columbia.[17] Cases such as this one alleging conspiracies actionable under § 1985(3) require considerable reflection and investigation by plaintiffs and their counsel before they decide to undertake to allege a complex conspiracy by such formidable adversaries as the FBI. For example, at one point in these proceedings government counsel refused, even after inquiries by the Court, to furnish plaintiffs' counsel with the addresses of named defendants who had retired from the FBI and whom plaintiffs sought to serve, but could not find. The obstacles which some defendants effectively placed (and could place in similar conspiracy cases) in the way of plaintiffs' efforts to identify, serve and depose them, demonstrates how a one-year statute of limitations could severely frustrate the remedial purposes of the Civil Rights Act. *See* 556 F.Supp. at 1184–86; 737 F.2d at 43. The complexities of this case further illustrate that the section 1985(3) remedy would not be adequately protected by the possibility of tolling a one-year statute upon proof of fraudulent concealment. *See* 737 F.2d at 33–37.

This particular case required many months (indeed years) of discovery and pretrial maneuvers. Seventeen days were required for trial. This Court's ruling on the

16. *McClam, supra,* does not foreclose consideration of the effect of the statute chosen upon the federal interest served by § 1985(3) ("Mere shortness of time provides no independent ground for rejecting a state limitations rule"). *Id.* at 375 (footnote omitted). To the contrary, *Wilson* requires such an examination. *Wilson, supra,* 105 S.Ct. at 1942–43. *See also Brown, supra,* 742 F.2d at 1504 ("State law rules are borrowed out of the need to effectuate federal policies in the face of incomplete federal law,

and they are not borrowed if they would incorporate into federal law balances of interests that are inconsistent with the policies underlying the federal action").

17. Again, it is assumed without deciding that the single umbrella statute selected for § 1983 actions also governs § 1985 and *Bivens* claims. *See* discussion *supra* at 463–64.

post-trial motions occupied forty pages of the Federal Supplement. 556 F.Supp. 1157–97. The Court of Appeals required sixty-seven pages to analyze the case. Enormous effort would have been required in order for plaintiffs, in a brief span of twelve months after being alerted to their potential claim, to: (1) find out in a serious way what had happened to them, how it had happened and who was responsible, (2) engage and inform counsel, and (3) file and serve an adequate complaint. Quite apart from what the jury found to be fraudulent concealment, it would be inconsistent with the purposes of § 1985(3) to restrict plaintiffs in situations such as the jury found to have existed here to one year in which to file a complaint.

It may be that a plaintiff and counsel in the run-of-the-mill police brutality claim under § 1983 can be reasonably expected to develop within one year the law and the evidence required to prepare and file a complaint which would survive a motion to dismiss and the rigors of Rule 11 of the Federal Rules of Civil Procedure. *See e.g., McClam v. Barry, supra.* However, this case was obviously more complex and required more investigation and preparation than a police brutality matter. The conspiracies being committed during Reconstruction before the eyes of the draftsmen of the Civil Rights Act, whose experience was relied upon by the *Wilson* Court, were also complex.[18] Moreover, complex litigation has characterized the efforts over time to afford civil remedies to citizens deprived of constitutional rights by various aggregations of local, state and federal officials.[19]

 Recognizing the variety of wrongs remediable under the Civil Rights Act and as constitutional torts, the single local statute selected pursuant to *Wilson* (if, indeed, a single statute must be selected after *Wilson* to govern § 1983, § 1985 and *Bivens* claims) must provide sufficient time for the preparation of a complex conspiracy complaint such as the one here, but not permit a simple assault claim to languish while memories and witnesses fade away. The choice of the three-year statute serves both of these goals.[20] Such a choice should achieve "the balance that Congress would have preferred between the substantive policies underlying the federal claim and the policies of repose." 105 S.Ct. at 1944. It would also serve the federal interest in intrastate uniformity sought by the *Wilson* Court.

In reaching this conclusion, the Court has not overlooked defendants' vigorous contention that the District of Columbia one-year statute must be applied to all constitutional torts and Civil Rights Act violations here because it addresses intentional torts and such intentional torts are most closely analogous to those wrongs which originally inspired the Civil Rights Act. Defendants urge that post-*Wilson* decisions of Courts of Appeal in other Circuits have directed the selection of statutes relating to intentional torts. *Mulligan v. Hazard,* 777 F.2d 340 (6th Cir.1985); *Gates v. Spinks,* 771 F.2d 916 (5th Cir.1985);

18. *See* Cong.Globe, 42d Cong., 1st Sess. 374 (1871) (remarks of Rep. Lowe) quoted in *Wilson,* 105 S.Ct. at 1947 ("Combinations, darker than the night that hides them, conspiracies, wicked as the worst of felons could devise....").

19. An example of the potential difficulties confronting individual plaintiffs who challenge a governmental entity on an issue as to which it is sensitive is found in an analogous context in litigation required to secure the admission of a black student at the University of Mississippi. *See Meredith v. Fair,* 83 S.Ct. 10, 9 L.Ed.2d 43 (1962); 328 F.2d 586 (5th Cir.1962); 313 F.2d 534 (5th Cir.1962); 306 F.2d 374 (5th Cir.1962); 305 F.2d 343 (5th Cir.), *cert. denied,* 371 U.S. 828, 83

S.Ct. 49, 9 L.Ed.2d 66 (1962); 298 F.2d 696 (5th Cir.1962); 202 F.Supp. 224 (S.D.Miss.), *rev'd,* 305 F.2d 343 (5th Cir.), *cert. denied,* 371 U.S. 828, 83 S.Ct. 49, 9 L.Ed.2d 66 (1962); 199 F.Supp. 754 (S.D.Miss.1961), *aff'd,* 298 F.2d 696 (5th Cir.1962). *See also United States v. Barnett,* 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964).

20. It is noted that the government, with all its resources, has *six* years in which to indict offenses arising under the internal revenue laws and involving "the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not...." 26 U.S.C. § 6531(1).

*Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985). Each of these decisions turned on the historic fact noted in *Wilson* that the Civil Rights Acts were passed in reaction to intentional violence of the Ku Klux Klan activity in the South and that the target of the then new law was intentional violence; the courts thus concluded that the statutes of limitations to be applied were those applicable to intentional violence.

The Supreme Court in *Wilson,* however, easily could have specified that the "one most appropriate statute of limitations" is that statute which is applicable to intentional torts. The Court conspiciously failed to do so. Instead it concluded that § 1983 claims are best characterized as "personal injury actions" and further stated that

> [g]eneral personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today; [footnote omitted] and probably did so in 1871 when § 1983 was enacted.

*Wilson, supra,* 105 S.Ct. at 1949.

Moreover, the 5th, 6th and 11th Circuit cases did not present (and those courts apparently did not consider) the problems posed by application of a one-year statute to a complex § 1985(3) case like this one. The legislative history of the Reconstruction Civil Rights Acts (quoted by the Supreme Court in *Wilson* ) and the historic context of that legislation make it clear that a simple focus in analysis under *Wilson* on the intentional nature of a tort or class of torts is too narrow. A statute of limitations to be selected pursuant to *Wilson* to govern § 1985 claims must be one which would permit a citizen to prepare and file suit against "[c]onspiracies, darker than the night that hides them, conspiracies wicked as the worst of felons could de-

vise...." Cong.Globe, 42d Cong., 1st Sess. 374 (1871) (remarks of Rep. Lowe), quoted in *Wilson,* 105 S.Ct. at 1947. Section 1985(3) is addressed literally to cases where "two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving ... any person ... of the equal protection of the laws...." For a plaintiff to find out that an attack on him in violation of § 1985(3) was intentional may not require much time. More than one year might well be required, however, to discover the identity of the responsible members of a clandestine complex conspiracy. Still more time would likely be required, even in the absence of fraudulent concealment, if the unknown co-conspirators were employees of a government agency engaged in systematic violations of constitutional rights. Such conspiratorial and systematic violations of constitutional rights have historically transpired in this country and elsewhere. They are an evil that our Bill of Rights and the Reconstruction Civil Rights Acts were designed to prevent. Selection of a one-year statute of limitations applicable to § 1985(3) and *Bivens* actions against complex criminal conspiracies undertaken by government employees in the District of Columbia (described in the Constitution as the Seat of Government [21]) would disserve the high purposes of the Reconstruction Civil Rights Act.

### III.

■ Even if *Wilson* required application of the special one-year statute of limitations to § 1983, § 1985(3) and *Bivens* actions in the District of Columbia, *Wilson* should not be retroactively applied to this case. The *Wilson* Court cited with apparent approval the decision of the Court of

---

**21.** U.S. Const. art. I, § 8, cl. 17.

This constitutional provision represents

> an unqualified grant of permanent legislative power over a selected area set apart for the enduring purposes of the general government, to which the administration of purely local affairs is obviously subordinate and incidental. The District is ... the capital—the very

> heart—of the Union itself, to be maintained as the "permanent" abiding place of all its supreme departments, and within which the immense powers of the general government were destined to be exercised....

*O'Donoghue v. United States,* 289 U.S. 516, 538–39, 53 S.Ct. 740, 745–46, 77 L.Ed. 1356 (1933).

Appeals for the Tenth Circuit in *Jackson v. City of Bloomfield*, 731 F.2d 652, 655 (1984), not to apply the *Wilson* principle retroactively so as to "bar plaintiffs' day in court when their action was timely under the law in effect at the time their suit was commenced." *Wilson*, 105 S.Ct. at 1942 n. 10.

The principles governing a decision as to whether a new rule should be retroactive are set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–7, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). *Chevron* indicates that three factors should be considered in determining whether a new principle of law should be given retroactive application. In order to avoid retroactive application:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [Citation omitted.] Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citation omitted.]

*Id.* at 106–7, 92 S.Ct. at 355. Applying those principles here, it is apparent that:

(1) Before *Wilson*, our Court of Appeals itself, upon consideration of precedent in this jurisdiction, found the three-year statute applicable in this case. *See* 737 F.2d at 32 n. 99 (finding the one-year statute "inapposite"). There was no way for plaintiffs to know from the case law in this jurisdiction in 1974 [22] that the one-year statute would apply (if it does), particularly when some personal injury cases are governed by the one-year statute while the bulk of them were governed by the three-year statute.

(2) As already indicated, the "high purpose" of the Civil Rights Acts would not be well served by requiring plaintiffs with a complex conspiracy case against government employees to organize it and file suit within one year of the discovery of the claim. No other federal policy espoused by the *Wilson* Court would be seriously impaired if any case pending in this District (especially one as advanced as this) was maintained under the three-year statute.

(3) The injustice of making the one-year statute retroactive at this late date in this litigation is manifest. This case was filed nine years ago after delays caused by what the jury found to be fraudulent concealment. Discovery was difficult and protracted. There has been a 17-day jury trial after which the jury deliberated for nearly five days before returning a verdict for the plaintiffs. The case has been carefully reviewed by this Court and the Court of Appeals. The Supreme Court denied the petition for certiorari while it had *Wilson* under advisement. Defendants have made absolutely no showing of prejudice on account of the delay from 1975 to 1976 in the filing of the complaint. Furthermore, whatever prejudice they might claim on account of witness attrition and fading memories is minimized in this case because of the extensive documentary basis for the plaintiffs' proof. Retroactive application of the one-year District of Columbia statute to this case at this late date would "produce

---

**22.** *See e.g., Alley v. Dodge Hotel, supra*, 501 F.2d at 881 n. 3 (Three-year statute applies to action seeking recovery for personal injury); *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979 (D.C.Cir.1973) (Three-year statute applied to race discrimination claim under § 1981 and Title VII); *Morfessis v. Baum*, 281 F.2d 938, 941 (D.C.Cir.1960) (Parties apparently agreed that if cause of action for malicious prosecution could be characterized as "abuse of process" claim, three-year statute applied); *Wiren v. Paramount Pictures, Inc.*, 206 F.2d 465 (D.C.Cir.1953), *cert. denied*, 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954) (No dispute over fact that three-year limitation governed fraud action).

inequitable results." *Chevron Oil, supra,* 404 U.S. at 106–7, 92 S.Ct. at 355.

Again, the Court has not in reaching this conclusion overlooked defendants' contentions that decisions in other Circuits argue against the result reached here. For example, the Court of Appeals for the Eighth Circuit gave *Wilson* retroactive application to a complaint by a prisoner who alleged that he had been held in administrative segregation for 21 months in violation of fourteenth amendment due process rights. *Wycoff v. Menke,* 773 F.2d 983 (8th Cir. 1985).[23] The lower court there had dismissed (before a trial had been held) the inmate's § 1983 action after concluding that Menke, a penitentiary official, was, under the circumstances, immune from suit. The Court of Appeals affirmed without reaching the merits of Wycoff's appeal, as it found *Wilson* retroactively applicable and Wycoff's suit time-barred. In part, the Court relied on the theory that applying *Wilson* retroactively would serve the *Wilson* Court's interest in uniformity—in that case, between the limitations applicable to cases brought before and cases brought after *Wilson* was announced.[24] However, the *Wilson* Court did not state that this was the kind of uniformity which it sought to effect. Rather, it sought uniformity with respect to § 1983 claims within a state, as distinguished from the flexibility which had characterized previous selection decisions in this and other Circuits. *See, e.g., McClam v. Barry, supra.* Most significantly, the *Wycoff* case was in an early pleading stage so that making the *Wilson* rule retroactive did not there effect the injustice that would result here if, after this long and involved litigation, the affirmed liability verdict were set aside. Accordingly, even if *Wilson* required application of the one-year statute to § 1985(3) claims, that decision should not be retroactively applied on the facts of this particular case.

## IV.

Defendant Pangburn moves for a new trial under Rules 59 and 60 of the Federal Rules of Civil Procedure. He contends that the Rule 59 motion is not out of time because he has ten days after judgment in which to file such a motion. Here, he contends, the Court of Appeals has vacated the judgment entered four years ago. Thus, he argues, the motion will not be out of time until ten days after this Court enters another judgment. Mr. Pangburn's argument proves too much; on his theory his motion is premature. Assuming, however, that the Rule 60 motion is neither premature nor out of time, it must still be denied.

As Mr. Pangburn himself recognized in his papers in support of this motion, the Court of Appeals determined (despite its reversal of verdicts with respect to certain other defendants and plaintiffs) that there was sufficient evidence to support the verdict against Mr. Pangburn. *See* Memorandum of Points and Authorities in Support of Defendant Gerould Pangburn's Motion for New Trial at 5–6. *See also* 737 F.2d at 56. In making this determination, the Court of Appeals implicitly rejected Mr. Pangburn's contention that its findings with respect to the liability of the District of Columbia defendants resulted in insufficient evidence to support a verdict against him. Moreover, the items of evidence specific to Mr. Pangburn on which the Court of Appeals focused in making this determination are *not* among the items that Mr. Pangburn here claims would now be inadmissible.

In addition, certain issues raised by Mr. Pangburn now could have been raised on appeal from the judgment on the 1981 verdict. For example, on appeal he could have

---

**23.** *See also Mulligan, supra,* at 343–44 (holding application should be retroactive).

**24.** The *Wycoff* Court did not observe the complete lack of uniformity which can result from a wooden approach to *Wilson* whereby the same federal action is governed by a one-year statute in Mississippi and a six-year statute in Alabama. *Compare Gates v. Spinks, supra,* 771 F.2d at 917, *with Jones v. Preuit & Mauldin, supra,* 763 F.2d at 1256.

emphasized the jury's possible reliance on his alleged connection with the Metropolitan Police Department ("MPD") element of the conspiracy and could have argued that if that element did not survive appeal, the judgment against him should also be set aside. Mr. Pangburn could also have argued on appeal that his case should have been severed from the other defendants. He chose not to do so, and his attempt to raise such issues now is not timely.

Mr. Pangburn's memorandum in support of his motion also erroneously assumes that certain evidence (of wiretapping and the alleged MPD conspiracy, as well as the testimony of plaintiff Reginald Booker) would be *inadmissible* at a new trial. He cites (1) the intervening decision in *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and (2) the rulings of the Court of Appeals with respect to the MPD defendants and plaintiff Booker as affecting the admissibility of evidence introduced at the first trial and relating to those claims. Plaintiffs correctly note in response that this evidence would have been admissible at a new trial as well (assuming appropriate proffers as to relevance), and Pangburn has not persuasively traversed that assertion.

Stripped to its essentials, Mr. Pangburn's Motion for a New Trial is yet another attempt to argue that the evidence at the first trial was insufficient to support a verdict against *him.* The Court of Appeals has already ruled with respect to this claim, and found, despite its decision to overturn the verdicts against the MPD defendants and for Booker, that the evidence *was* sufficient to support the verdict against Mr. Pangburn. In the circumstances of this civil case, his motion for a new trial must be denied.

## APPENDIX A

**CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C., 20001**

October 25, 1985

### BREAKDOWN OF TORTS BY CATEGORIES

| | Categories | June 82 to June 83 | June 83 to June 84 | June 84 to June 85 |
|---|---|---|---|---|
| 310 | Airplane | 87 | 33 | 116 |
| 315 | Airplane Product Liability | 3 | 5 | 2 |
| 320 | Assault, Libel & Slander | 54 | 61 | 56 |
| 330 | Federal Employers' Liability | 18 | 14 | 7 |
| 340 | Marine | 2 | 1 | 2 |
| 345 | Marine Produce Liability | 0 | 0 | 0 |
| 350 | Motor Vehicle | 448 | 480 | 421 |
| 355 | Motor Vehicle Product Liability | 8 | 9 | 14 |
| 360 | Other Personal Injury | 322 | 254 | 329 |
| 362 | Personal Injury Medical Malpractice | 44 | 58 | 57 |
| 365 | Personal Injury Product Liability | 200 | 51 | 92 |
| 368 | Asbestos Personal Injury Product Liability | — | 0 | 1 |
| 370 | Other Fraud | 32 | 28 | 32 |
| 371 | Truth in Lending | 2 | 7 | 1 |
| 380 | Other Personal Property Damage | 34 | 21 | 20 |
| 385 | Product Damage Product Liability | 3 | 2 | 0 |
| | | 1,257 | 1,024 | 1,150 |

**CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
WASHINGTON, D.C., 20001**

October 25, 1985

<u>MEMORANDUM TO JUDGE OBERDORFER</u>

Re: Civil Cases Terminated by Nature of Suit and District

I spoke with Dave Gentry of the Statistical Analysis and Management Section at the Administrative Office, who said that the categories you inquired about are broken down the following way:

<u>Motor Vehicle Personal Injury:</u>

*350
355

<u>Other Personal Injury:</u>

| | |
|---|---|
| 310 | 362 |
| 315 | 365 |
| 360 | 368 |

<u>Other Tort Actions:</u>

370
371
380
385

* The attached JS–44C, which is completed by the person filing the case, shows that type of case each number represents.

/s/ NMM
Nancy M. Mayer

JS 44C
(Rev. 12/84) ⊕

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

| II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) | | |
|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | | PTF DEF | PTF DEF |
| | | Citizen of This State | ☐ 1 ☐ 1 | Incorporated or Principal Place of Business in This State ☐ 4 ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business in Another State ☐ 5 ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation ☐ 6 ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

### V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury— Med Malpractice | ☐620 Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product Liability | ☐365 Personal Injury Product Liability | ☐630 Liquor Laws | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | ☐320 Assault, Libel & Slander | ☐368 Asbestos Personal Injury Product Liability | ☐640 R R & Truck | **PROPERTY RIGHTS** | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐330 Federal Employers' Liability | | ☐650 Airline Regs | ☐820 Copyrights | ☐460 Deportation |
| ☐151 Medicare Act | ☐340 Marine | | ☐660 Occupational Safety/Health | ☐830 Patent | ☐810 Selective Service |
| ☐152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐345 Marine Product Liability | **PERSONAL PROPERTY** | ☐690 Other | ☐840 Trademark | ☐850 Securities/Commodities/ Exchange |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐350 Motor Vehicle | ☐370 Other Fraud | | **SOCIAL SECURITY** | ☐891 Agricultural Acts |
| ☐160 Stockholders' Suits | ☐355 Motor Vehicle Product Liability | ☐371 Truth in Lending | **LABOR** | ☐861 HIA (1395ff) | ☐892 Economic Stabilization Act |
| ☐190 Other Contract | ☐360 Other Personal Injury | ☐380 Other Personal Property Damage | ☐710 Fair Labor Standards Act | ☐862 Black Lung (923) | ☐893 Environmental Matters |
| ☐195 Contract Product Liability | | ☐385 Property Damage Product Liability | ☐720 Labor/Mgmt. Relations | ☐863 DIWC (405(g)) | ☐894 Energy Allocation Act |
| | | | | ☐863 DIWW (405(g)) | ☐895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐730 Labor/Mgmt. Reporting & Disclosure Act | ☐864 SSID Title XVI | ☐900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motions to Vacate Sentence | ☐740 Railway Labor Act | ☐865 RSI (405(g)) | ☐950 Constitutionality of State Statutes |
| ☐220 Foreclosure | ☐442 Employment | 28 USC 2255 | | **FEDERAL TAX SUITS** | ☐890 Other Statutory Actions |
| ☐230 Rent Lease & Ejectment | ☐443 Accommodations | ☐530 Habeas Corpus | ☐790 Other Labor Litigation | ☐870 Taxes | |
| ☐240 Torts to Land | ☐444 Welfare | ☐540 Mandamus & Other | | ☐871 IRS-Third Party 26 USC 7609 | |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐550 Civil Rights | ☐791 Empl. Ret. Inc. Security Act | ☐875 Customer Challenge 12 USC 3410 | |
| ☐290 All Other Real Property | | | | | Appeal to District |

### VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☐1 Original Proceeding ☐2 Removed from State Court ☐3 Remanded from Appellate Court ☐4 Reinstated or Reopened ☐5 Transferred from another district (specify) ☐6 Multidistrict Litigation ☐7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S)** (See instructions)
IF ANY JUDGE _____ DOCKET NUMBER _____

DATE SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

Category in which case belongs:

_____ A. Anti-Trust Cases

_____ B. Malpractice Cases

_____ D. Temporary Restraining Orders and Preliminary Injunctions (If a TRO is requested in an Anti-Trust or Labor Relations Case, the A or C designation will govern.)

_____ E. General Civil Cases

_____ F. Pro Se General Civil Cases

G. Habeas Corpus Cases

H. Equal Employment Opportunity cases (If filed by a pro se litigant, the case is to be assigned from this H Category.)

I. Freedom of Information Act Cases (If filed by a pro se litigant, the case is to be assigned from this I Category.)

## Appendix B–1

Table 9. Civil Actions Branch: Number and Type of Cases Filed by Jury and Non-Jury Demands

(January – March 1985)

| Type of Case | Jury Demands | | | | | | Total Jury Demands | Non-Jury Demands (No Jury Requested) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Six Person Jury | | | Twelve Person Jury | | | | |
| | Plaintiff | Defendant | Total | Plaintiff | Defendant | Total | | |
| **Personal Torts:** | | | | | | | | |
| Automobile | 16 | – | 16 | 4 | – | 4 | 20 | 14 |
| Assault and Battery | 9 | – | 9 | 4 | – | 4 | 13 | 4 |
| Personal Injury | 99 | 1 | 100 | 24 | 1 | 25 | 125 | 59 |
| False Arrest | 2 | – | 2 | 2 | – | 2 | 4 | 4 |
| Malpractice: Legal | 2 | – | 2 | – | – | – | 2 | 3 |
| Medical | 13 | – | 13 | 10 | – | 10 | 23 | 4 |
| .Negligence | 108 | 1 | 109 | 35 | – | 35 | 144 | 60 |
| Libel and Slander | 1 | – | 1 | 1 | – | 1 | 2 | 16 |
| Other | 8 | – | 8 | 4 | – | 4 | 12 | 16 |
| Total | 258 | 2 | 260 | 84 | 1 | 85 | 345 | 180 |
| **Property Torts:** | | | | | | | | |
| Automobile | 4 | – | 4 | 1 | – | 1 | 5 | 50 |
| Destruction of Property | 1 | – | 1 | – | – | – | 1 | 1 |
| Property Damage | 5 | 1 | 6 | 2 | – | 2 | 8 | 27 |
| Conversion | 1 | – | 1 | – | – | – | 1 | 1 |
| Other | – | – | – | – | – | – | – | 2 |
| Total | 11 | 1 | 12 | 3 | – | 3 | 15 | 81 |
| **Contracts:** | | | | | | | | |
| Breach of Contract | 28 | 1 | 29 | 14 | 1 | 15 | 44 | 369 |
| Specific Performance | – | – | – | – | 1 | 1 | 1 | 1 |
| Debt | 2 | – | 2 | 1 | – | 1 | 3 | 311 |
| Money Owed | 1 | 1 | 2 | – | 1 | 1 | 3 | 162 |
| Promissory Note | 1 | 1 | 2 | – | 1 | 1 | 3 | 4 |
| Services Rendered | 1 | 2 | 3 | – | 1 | 1 | 4 | 93 |
| Other | 4 | – | 4 | 1 | – | 1 | 5 | 314 |
| Total | 37 | 5 | 42 | 16 | 5 | 21 | 63 | 1,254 |
| Landlord and Tenant | – | 30 | 30 | – | 82 | 82 | 112 | – |
| Small Claims | – | 3 | 3 | – | 1 | 1 | 4 | – |
| **Other:** | | | | | | | | |
| Change of Name | – | – | – | – | – | – | – | 110 |
| Foreign Judgment | 1 | – | 1 | – | – | – | 1 | 46 |
| Temporary Restraining Order | 3 | – | 3 | – | – | – | 3 | 29 |
| Petition to Enforce Mechanic Lien | – | – | – | – | – | – | – | 10 |
| Writ of Replevin | – | – | – | 1 | – | 1 | 1 | 12 |
| Other | 5 | – | 5 | – | – | – | 5 | 128 |
| Total | 9 | – | 9 | 1 | – | 1 | 10 | 335 |
| TOTAL | 315 | 41 | 356 | 104 | 89 | 193 | 549* | 1,850 |
| **Percent of Cases** | | | | | | | | |
| Current Quarter | 57 | 8 | 65 | 19 | 16 | 35 | 100 | |

SOURCE: Data furnished by the Civil Division and Computer Data.

* This figure includes Landlord and Tenant, Small Claims and Civil Actions cases requesting new Jury demands. Some of these cases have been previously filed.

## Appendix B–2

Table 9. Civil Actions Branch: Number and Type of Cases Filed by Jury and Non-Jury Demands

(April – June 1985)

| Type of Case | Six Person Jury Plaintiff | Defendant | Total | Twelve Person Jury Plaintiff | Defendant | Total | Total Jury Demands | Non-Jury Demands (No Jury Requested) |
|---|---|---|---|---|---|---|---|---|
| Personal Torts: | | | | | | | | |
| Automobile | 13 | – | 13 | 7 | – | 7 | 20 | 6 |
| Assault and Battery | 17 | – | 17 | 6 | – | 6 | 23 | 8 |
| Personal Injury | 103 | 1 | 104 | 20 | 1 | 21 | 125 | 35 |
| False Arrest | 1 | – | 1 | 2 | – | 2 | 3 | 4 |
| Malpractice: Legal | 1 | – | 1 | 1 | – | 1 | 2 | 2 |
| Medical | 16 | – | 16 | 4 | 1 | 5 | 21 | 4 |
| Negligence | 158 | 3 | 161 | 27 | – | 27 | 188 | 83 |
| Libel and Slander | 1 | 1 | 2 | 1 | – | 1 | 3 | 2 |
| Other | 17 | – | 17 | 4 | – | 4 | 21 | 14 |
| Total | 327 | 5 | 332 | 72 | 2 | 74 | 406 | 158 |
| Property Torts: | | | | | | | | |
| Automobile | 6 | – | 6 | 1 | 1 | 2 | 8 | 52 |
| Destruction of Property | – | 1 | 1 | – | – | – | 1 | 2 |
| Property Damage | 6 | 1 | 7 | – | – | – | 7 | 29 |
| Conversion | 3 | – | 3 | – | – | – | 3 | 3 |
| Other | – | – | – | – | – | – | – | 2 |
| Total | 15 | 2 | 17 | 1 | 1 | 2 | 19 | 88 |
| Contracts: | | | | | | | | |
| Breach of Contract | 43 | 4 | 47 | 16 | 1 | 17 | 64 | 411 |
| Specific Performance | – | – | – | – | – | – | – | 1 |
| Debt | – | 1 | 1 | – | – | – | 1 | 404 |
| Money Owed | 1 | 3 | 4 | – | 1 | 1 | 5 | 217 |
| Promissory Note | – | – | – | – | – | – | – | 133 |
| Services Rendered | 1 | – | 1 | – | – | – | 1 | 61 |
| Other | 2 | 4 | 6 | 2 | 3 | 5 | 11 | 151 |
| Total | 47 | 12 | 59 | 18 | 5 | 23 | 82 | 1,378 |
| Landlord and Tenant | – | 24 | 24 | – | 57 | 57 | 81 | – |
| Small Claims | – | 3 | 3 | – | 3 | 3 | 6 | – |
| Other: | | | | | | | | |
| Change of Name | – | – | – | – | – | – | – | 101 |
| Foreign Judgment | 1 | – | 1 | – | 1 | 1 | 2 | 44 |
| Temporary Restraining Order | 2 | – | 2 | – | – | – | 2 | 22 |
| Petition to Enforce Mechanic Lien | – | – | – | – | – | – | – | 7 |
| Writ of Replevin | – | – | – | – | – | – | – | 10 |
| Other | 1 | – | 1 | – | 1 | 1 | 2 | 125 |
| Total | 4 | – | 4 | – | 2 | 2 | 6 | 309 |
| TOTAL | 393 | 46 | 439 | 91 | 70 | 161 | 600* | 1,933 |
| Percent of Cases Current Quarter | 66 | 7.0 | 73 | 15 | 12 | 27 | 100 | |

SOURCE: Data furnished by the Civil Division and Computer Data.

* This figure includes Landlord and Tenant, Small Claims and Civil Actions cases requesting new Jury demands. Some of these cases have been previously filed.