Tina **HOBSON, et al., Plaintiffs,**

v.

**Charles D. BRENNAN, et al.,
Defendants.**

**Civ. A. No. 76–1326.**

United States District Court,
District of Columbia.

June 24, 1986.

Anne Pilsbury, Washington, D.C., Armand Derfner, Charleston, S.C., for plaintiffs.

David H. White, Dept. of Justice, Washington, D.C., J. Frederick Sinclair, Alexandria, Va., Brian P. Gettings, R. Scott Caulkins, Cohen, Gettings, Alper & Dunham,

Arlington, Va., William W. Greenhalgh, Patricia L. Maher, Earl J. Silbert, Schwalb, Donnenfeld, Bray & Silbert, A. Raymond Randolph, Christopher L. Varner, Randolph & Fruitt, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

In 1976, plaintiffs filed this suit alleging that in the late 1960's and early 1970's the defendants had violated the plaintiffs' First Amendment rights in carrying out the F.B.I. COINTELPRO program. The case was tried to a jury over 17 days in 1981; plaintiffs prevailed. *Hobson v. Wilson,* 556 F.Supp. 1157 (D.D.C.1982). In 1984, the Court of Appeals filed a 66 page opinion validating the jury's finding that the F.B.I. defendants violated plaintiffs' constitutional rights, but remanded for a redetermination of compensatory and punitive damages. *Hobson v. Wilson,* 737 F.2d 1 (D.C.Cir.1984) (Edwards, Scalia, and Starr, JJ., per Edwards, J.). The Supreme Court denied certiorari on March 25, 1985, —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985), and the mandate issued thereafter. In January 1986, after resolving defendants' renewed plea that the action was time-barred, *Hobson v. Brennan,* 625 F.Supp. 459 (D.D.C.1985), I scheduled retrial of the damages issue for two weeks, beginning June 16, 1986. Several pretrial conferences and five pretrial orders were required to refine the evidence and the instructions for a manageable trial. The final pretrial conference was held on June 10, 1986; all counsel and witnesses were ready for trial. Then, on June 12, 1986, the Administrative Office of the United States Courts announced that, in order to avoid a violation of the Anti-Deficiency Act, an Executive Committee of the Judicial Conference had directed the suspension of civil jury trials until supplemental appropriation legislation is enacted by Congress and signed by the President. Memorandum To All United States District Judges, Subject: Suspension of Civil Jury Trials, dated June 12, 1986 and signed by L. Ralph Mecham ("June 12 Memorandum").

Uncertain as to when those funds will become available, I cancelled the June 16 trial and have since postponed it from day-to-day. On June 19, 1986, plaintiffs filed a Motion for Order Mandating the Selection of a Jury and for Relief from Judicial Conference Stay on Selection of Civil Juries. Meanwhile, I have sought from the Circuit Judicial Council, and ultimately from the Judicial Conference, an exception to the bar to empanelling and paying a civil jury for this case. Hopefully, this administrative process will moot plaintiffs' motion. However, the motion has now been briefed and argued. Canvass of counsel on June 23, 1986, discloses that their own commitments, as well as those of parties and witnesses (not to mention the Court) will make rescheduling of this proceeding very difficult, and that many practical considerations require that it proceed during the two week period for which it was scheduled back in January.

Scheduling and rescheduling is made particularly complicated in this case by the fact that there are five plaintiffs and five defendants. Plaintiffs state their intention to call twelve witnesses. Defendants are represented by nine busy lawyers. The parties and their counsel have multiple commitments. Through great effort, they have cleared their schedules for the two week period beginning June 16, 1986.

Furthermore, the heart of this case is a conspiracy charge. There are also claims for punitive damages. Four defendants are willing to waive a jury trial on the damages issue and the plaintiffs would be willing to waive a jury if the fifth defendant agreed to do so. But that defendant, as is his right, demands a jury trial, contending vigorously that he is in a different category from the four other defendants. Since a jury trial is necessary for one defendant, and the valuation of a constitutional right is, at best, an imprecise process, *see Hobson v. Wilson, supra,* 737 F.2d at 62; *Dellums v. Powell,* 566 F.2d 167, 194–96 (D.C.Cir.1977), I concluded that

the fairest and most efficient course would be to have the jury, required by the defendant who demands a jury trial, also render an advisory verdict as to the damages due from the other defendants.

In this impasse, I have toyed with and, for the time being, rejected the idea of deciding the damages issue due from the four defendants on the papers after argument and postponing to another day a jury trial focussed on a single defendant. Plaintiffs argue persuasively that such a severance would be excessively burdensome to them, and to the Court. It could also distort the jury's perspective of the conspiracy and would deprive me of an advisory jury in a situation in which one would be most helpful. In any event, severance would materially alter what I believe would be the correct and fair process for final resolution of this ten-year-old case.

Plaintiffs argue the hardship to themselves and question the legal, as well as the constitutional, authority for the direction that District Judges suspend jury trials. The United States declined to respond to my request that it file a brief as *amicus curiae. See* Order filed June 19, 1986. However, I have been furnished a brief filed by the United States on behalf of the respondent District Court in *Armster v. United States District Court for the Central District of California,* 792 F.2d 1423 (9th Cir.). There, it is argued that the Seventh Amendment, unlike the Sixth Amendment, does not contemplate a "speedy" trial so that plaintiffs have no constitutional right to a civil jury trial on a particular date. *Id.* at 1425–27. In addition, the respondent relies upon the Anti-Deficiency Act, 31 U.S.C. § 1341, *et seq. Id.* at 1427–28.

However, there is no claim that funds are presently unavailable so that a check drawn by a Clerk of Court for jurors' fees would be dishonored by the Treasury. Rather, as I understand the rationale for the suspension of civil jury trials, if spending for both criminal and civil juries continued at the present rate, and *if* there were no supplemental appropriations before Sep-

tember 30, 1986, funds would not be available for other juries empanelled at some later date in the fiscal year. Furthermore, the June 12 Memorandum suspending civil jury trials noted that "The Urgent Supplemental Appropriations Bill (H.R. 4515) includes $3.8 million in jury funds, and this bill has been approved by the House and by the Senate." *Id.* at 1424. This is surely not the first time that government agencies (assuming that it is appropriate to apply that term to the Judicial Branch) have faced budget impasse situations without sacrificing essential, indeed, constitutionally mandated, functions. In a test between a debatable interpretation of the Anti-Deficiency Act and the Constitution's requirement that we judges "preserve" the right of trial by jury in civil cases, the latter must prevail in the special circumstances of this case.

In persisting in this course, I am greatly influenced by the broader implications of this impasse. There is a principle at stake. The Seventh Amendment to the United States Constitution provides that:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . .

As Justice Rehnquist has observed, albeit in dissent, in a related context:

> The founders of our Nation considered the right of trial by jury in civil cases an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary.

*Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 343, 99 S.Ct. 645, 657–58, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting) (footnote omitted). He reiterated the concern expressed by Justice Black in 1943 that " 'judicial erosion . . . of the essential guarantee of the Seventh Amendment'. . . . continues apace. . . ." *Id.* at 339, 99 S.Ct. at 655, quoting with approval *Galloway v. United States,* 319 U.S. 372, 397, 63 S.Ct. 1077, 1090, 87 L.Ed. 1458 (1943) (Black, J., dissenting). In the face of such threatened

erosion, judges have an "obligation to enforce the Seventh Amendment, which *was* included in the Bill of Rights of 1791 and which has not since been repealed...." *Parklane, supra,* 439 U.S. at 338, 99 S.Ct. at 655 (Rehnquist, J., dissenting) (emphasis in original). In my opinion, indefinite suspension of the jury trial scheduled in this case for the two weeks beginning June 16, 1986, in order to anticipate a future shortage of funds would violate that duty.

Accordingly, an accompanying order sets this case for trial at 9:30 A.M. on June 27, 1986, directs the Clerk of Court to provide jurors to Courtroom No. 3 at that time, and to honor their vouchers for jury service.