Daniel M. WEMHOFF, Appellant,

v.

INVESTORS MANAGEMENT CORPO-
RATION OF AMERICA, et
al., Appellees.

No. 85–542.

District of Columbia Court of Appeals.

Argued April 16, 1987.
Decided April 28, 1987 *.

Raymond B. Benzinger, Washington,
D.C., for appellant.

Waldemar J. Pflepsen, Jr., Washington,
D.C., for appellees.

Before PRYOR, C.J., and FERREN
and ROGERS, JJ.

* The decision in this case originally was released
as a Memorandum Opinion and Judgment.  It is
being published pursuant to this court's order
granting appellant's motion for publication.

**PER CURIAM:**

In early February 1974, appellant, Daniel M. Wemhoff, entered into an oral agreement with William Floria, president of IN-MANCO and sole proprietor of the Floria Agency. Under the agreement, appellant was to act as an agent for Floria Agency and sell Tax Sheltered Annuities (TSA) to teachers in the Montgomery County, Maryland Public School System. Appellant was to receive commissions on his annuity sales equal to a percentage of the amount paid by each customer into the fund. Since payments were made through a payroll deduction method, appellant's commission payments would be staggered over the time each customer remained a participant in the TSA program. Customers could cease participation in the program at any time.

Floria terminated appellant's agency relationship on March 3, 1976, after appellant and four or five other agents attempted to force Floria to reduce their oral employment arrangement to written contractual form. Following appellant's discharge, Floria and INMANCO refused to pay appellant commissions on the contributions appellant's customer's made after his discharge, and appellant brought suit to recover these commissions. Appellant claims the commissions were earned before his discharge although they became payable after the discharge. INMANCO and Floria, on the other hand, contend that Wemhoff was not entitled to any commissions on contributions paid after his discharge, and moved for summary judgment. IN-MANCO/Floria were granted summary judgment. On appeal, this court disagreed, finding that a genuine issue of material fact existed as to whether continued receipt of commissions after discharge was contingent on servicing the annuity contracts. *Wemhoff v. Investors Management Corp.,* 455 A.2d 897, *reh'g en banc denied,* 472 A.2d 51 (D.C.1983).

Following a bench trial, the court issued findings of fact and conclusions of law and a judgment in favor of INMANCO/Floria.

**I**

■ Appellant claims that two of the trial court's factual findings are clearly erroneous.[1] First, appellant contends that the key elements of the contract were fully articulated by this court in its reversal of the trial court's initial grant of summary judgment for appellees. This court acknowledged that appellees had admitted the existence of an oral contract in their admission to Paragraph 5, Count I of appellant's Complaint which states:

> By oral agreement and practice ... IN-MANCO agreed to compensate plaintiff in the amount of 2 percent commission for all tax sheltered investment annuity (TSA) contributions procured. Contributions into the TSA program were made directly to INMANCO by Plaintiff's originally procured customers.

■ According to appellant, the trial court should have looked no further than this judicial admission to determine whether appellant was entitled to receive commissions paid after his discharge. We have

---

**1.** Appellant asks this court to notice that fourteen of the trial court's sixteen findings of fact were adopted verbatim from the defendant's proposed findings and the remaining two were consistent with the proposed findings. Because of this near verbatim adoption, appellant asks for strict review of the court's findings.

Generally, we will not overturn a trial court's findings of fact unless clear error has been committed, D.C. Code § 17–305(a) (1981), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Super.Ct.Civ.R. 52(a). Where, as here, the trial court adopts verbatim the proposed findings of one party, the standard of review should be more strict, but the essential consideration on review remains the same; that

is, whether the court's findings and conclusions ultimately represent the judge's own determinations. *Sullivan v. Malarkey,* 392 A.2d 1057 (D.C. 1978). Here the proposed findings were submitted to the court on October 24, 1984; appellant's critical response was filed on October 31, 1984; and the trial court issued its findings on April 2, 1985. In issuing its findings, the court refused to adopt seven of the defendant's proposed findings and deleted substantive portions of the remaining sixteen proposals. Our comparison of the proposed findings with appellant's response to them and the court's actual findings reveals that the court made its own determination as to the findings, and none of the findings is clearly erroneous.

held that an in-court admission that an oral agreement exists constitutes a waiver to the statute of frauds defense. *Hackney v. Morelite Construction,* 418 A.2d 1062, 1066–67 (D.C.1980). *See also Tauber v. District of Columbia,* 511 A.2d 23, 27 (D.C. 1986); CORBIN ON CONTRACTS ch. 22, § 498 (1982 Supp.); U.C.C. § 2–201; *Brown v. Brown,* 343 A.2d 59 (D.C.1975) (recognizing estoppel as exception to statute of frauds as well); *Patrick v. Hardisty,* 483 A.2d 692 (D.C.1984) (recognizing part performance as exception to statute of frauds).

On appellant's theory, a judicial admission adequate to bar a statute of frauds defense is necessarily a complete statement of the essential terms of the agreement. We reject appellant's contention. This court's holding in *Wemhoff v. Investors Management Corp., supra,* 455 A.2d at 898, can only be construed as a recognition (1) that an oral contract between appellant and Floria existed; (2) that because Floria admitted as much in his answer to appellant's complaint, sufficient evidence existed to derail appellees' statute of frauds defense; and finally (3) as to the exact terms of the contract, an adequate showing that material factual issues existed had been made, and that the case should proceed to trial. Specifically, and in direct contradiction to appellant's understanding of this court's earlier ruling, we said that material issue was "whether appellant was entitled, pursuant to his oral contract, to commissions on contributions received after his termination." *Id.* at 899.

In other words, the case was remanded to the trial court to determine whether appellees had in fact promised appellant that he would receive commission payments regardless of whether he serviced the contracts he had procured. We do not, as appellant urges, regard the holding as having articulated a complete catalog of terms of the contract. To so interpret the holding would be equivalent to resolving the very issue at stake, making nonsense of this court's remand order.

By finding the judicial admission sufficient to block a statute of frauds defense, this court said nothing about the actual terms of the contract; nor would it have been appropriate on summary judgment to do so, for that is initially a function of a trial court. In addition, we left open the question of whether the substance of the judicial admission represented the complete, integrated version of the oral agreement.

■ At the heart of appellant's claim is his mistaken conflation of the legal concepts of parol evidence and statute of frauds.

The relationship between the parol evidence rule and the statute of frauds frequently has been made more intimate than either rule requires. The former bars the admission of prior written or prior or contemporaneous oral evidence that adds to or is inconsistent with the terms of a written document that constitutes a complete and final (integrated) statement of the parties' agreement. The latter bars enforcement of certain oral agreements unless there is a written memorandum signed by the party to be charged.... [T]he statute ... does *not* require an exhaustive, integrated statement of the agreement in writing, but only a sufficient statement to establish that there in fact *was* an agreement and that the party charged should be bound by it.

*Hackney v. Morelite Construction, supra,* 418 A.2d at 1065 n. 1. A judicial admission adequate to bar a statute of frauds defense is not, therefore, necessarily a complete statement of the essential terms of the agreement.

Upon review of the record, we find it is implicit in the trial court's findings of fact that the judicial admission did not fully represent all of the terms of the oral agreement. In fact, this court anticipated that the trial court may, indeed, reach just that conclusion when it said, *"if appellees promised* that appellant would receive commissions regardless of whether he was available to service his customers, he, thereafter, would be entitled to those commissions." *Wemhoff v. Investors Management Corp., supra,* 455 A.2d at 900 n. 3. (emphasis added). Accordingly, we left it

up to the trial court to determine whether such an oral promise had been made. After hearing all the evidence in the case, the court found that no such promise had been made and that appellant was not entitled to commissions generated after his discharge.

Appellant has failed to distinguish between evidence sufficient to establish that a contract exists and evidence sufficient to establish exactly what contract exists. Absent the court's determination that the judicial admission was the "complete and exclusive statement of the terms of the agreement," it was not erroneous to consider "extrinsic" evidence of appellant's servicing duties. *Ochs v. Weil*, 79 U.S.App.D.C. 84, 142 F.2d 758 (1944); *Hackney v. Morelite Construction, supra*, 418 A.2d at 1065. *See also* U.C.C. § 2–201, comment 1 (to undercut statute of frauds defense, writing need not contain all material terms of the contract and such material terms as are stated need not be precisely stated); U.C.C. § 2–201, comment 7.[2]

## II

■ Appellant Wemhoff contends here, as he did at trial, that his right to the commissions continued after his discharge[3] and was not contingent upon his continuing to service customers or his continued employment by INMANCO. Rather, appellant argues that he contracted with appellee Floria to procure clients and that that alone was the basis for his compensation. Floria and INMANCO argue that Wemhoff's continuing right to the commissions was contingent upon his servicing the contracts and, therefore, terminated when he was discharged.[4] According to appellees, the 2 percent commission was designed to

compensate appellant for his attention to and servicing of his customers' accounts.

The court, after hearing evidence from both parties, concluded that

plaintiff's employment, in addition to requiring him to solicit participation in the TSA program, clearly called for him to service the needs of the participants once enrolled in the program, thereby maintaining the flow of commissions. Thus, the Court finds that plaintiff was to earn his commissions not merely through the introduction or procurement of teachers for the program but through his continuing to service the needs of those teachers whom he had enrolled. [Findings of Fact, ¶ 16.]

Accordingly, the court found the contract to encompass dual responsibilities. The court's findings leave unsettled, however, whether either of these contractual elements is a condition precedent or subsequent or merely a co-existing covenant between the parties.

■ While it is clear to us that the contract embraced both functions, and it is clear that the parties did not expressly agree that appellant would be compensated after his discharge, it nevertheless is unclear that the parties contemplated that appellant would not be compensated at all unless he performed both functions. In other words, it is not clear that "servicing" was intended by both parties as a condition precedent to payment. In light of this loose end, it might well have been argued that appellant's compensation was in part for procuring customers and in part for servicing them, and, to the extent these two functions were severable, he was enti-

---

2. Appellant also notes that the court found that he had been hired by INMANCO on February 5, 1974 when the evidence at trial was that William Floria, acting as Floria Agency, hired Wemhoff and that INMANCO, Inc., was either a separate or a later-formed entity not interchangeable with appellee Floria. We note that the distinction urged by appellant is irrelevant to the outcome of this case.

3. Appellant was an at-will employee and, so, as is generally the case, he could be terminated at will by his employer for any reason or no reason at all. *Taylor v. Greenway Restaurant, Inc.,*

173 A.2d 211 (D.C.1961). Nor does appellant's situation rise to a level sufficient to evoke inquiry into the possibility that his discharge is in violation of "some statutorily declared public policy," and thereby sidestep the general rule. *See Ivy v. Army Times Publishing Co.,* 428 A.2d 831 (D.C.1981) (*en banc*) (Ferren, J., dissenting).

4. Appellant's accounts were turned over to a new agent or agents, and these new INMANCO employees, not INMANCO itself, had been receiving commissions on them.

tled to receive compensation for work done. To the extent that the 2 percent commissions received after March 3, 1976 could have been characterized as compensation for servicing the accounts, appellant would not be entitled to them. To the extent, however, that the commissions received after appellant's termination could have been characterized as deferred compensation for initially soliciting customers, appellant might have been entitled to them. Apparently, neither the trial court nor either party entertained this legal theory of apportionment or one similar to it; neither party offered evidence assigning relative values to procurement and servicing. Instead, appellees staunchly maintained throughout that servicing was a condition precedent to receipt of any commissions, and appellant, with equal vigor, maintained that servicing was not an element of the contract at all.

We are reluctant to interpret the servicing aspect of the agreement as a condition precedent, as that would in effect work a forfeiture upon appellant. RESTATEMENT (SECOND) OF CONTRACTS § 227(1) (1971). "The policy favoring freedom of contract requires that, within broad limits (see § 229), the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture." *Id.* comment b. We are, however, unable to reach any other conclusion. Appellant had a fair opportunity to present such an alternate theory at trial and did not do so. Indeed, counsel for appellant virtually conceded at oral argument that no such evidence was or could have been available to the trial court. *See Chase v. Gilbert,* 499 A.2d 1203, 1209 & n. 7 (D.C.1985) (theory of case not raised at trial will not be heard on appeal); *Morski v. Murphy,* 85 A.2d 806, 807–08 (D.C.1952) (same). Accordingly, we find no error in the trial court's holding that appellant has not proven by a preponderance of the evidence that commissions were due to him solely for

having initially solicited the business of customers. The judgment on appeal is

*Affirmed.*