**Gale ALDER, Plaintiff,**

v.

**COLUMBIA HISTORICAL SOCIETY, Perry G. Fisher, Mark G. Griffin, Defendants.**

**Civ. A. No. 86–3251.**

United States District Court, District of Columbia.

May 17, 1988.

Joseph M. Sellers, [COR LD NTC] Lawyers' Committee for Civ. Rights Under Law, Brett L. Antonides, and Amy R. Doberman, Washington, D.C., for plaintiff.

Michael B. McGovern, Joseph J. Levin, Jr., Adams, McCullough & Beard, Washington, D.C., for defendants.

## MEMORANDUM

BRYANT, Senior District Judge.

Plaintiff Gale Alder, a white female, has brought this action against defendants Columbia Historical Society and two of its officers for injury arising out of the termination of her employment by the Columbia Historical Society. Plaintiff alleges she was terminated from her job in retaliation for her opposition to defendants' discriminatory treatment of another employee. The complaint asserts claims under 42 U.S. C. §§ 1981 and 1985(3), D.C.Code §§ 1-2525 and 1-2526 and for wrongful discharge. This matter is before the court on defendants' motion to dismiss.

## BACKGROUND

Defendant Columbia Historical Society ("the Society") is a private membership organization incorporated under District of Columbia law. Defendant Perry G. Fisher was, at the time these claims arose, the Executive Director of the Society. Defendant Mark G. Griffin was President or President-elect of the Society. Plaintiff was hired by the Society in January 1982 to provide administrative and professional support to its Executive Director, President and Treasurer.

In December 1983, acting on defendant Fisher's recommendation, the Society's Board adopted a resolution to terminate Mrs. Daisy Jackson, an elderly black woman who since 1974 had been responsible for cleaning the Society's headquarters, and to replace her with a white man who would be paid almost three times the wages earned by Mrs. Jackson. Plaintiff believed that defendants had discriminated against Mrs. Jackson on the basis of race and sex and therefore undertook to obtain documentation from defendant Fisher that would assist Mrs. Jackson should the latter wish to challenge her discharge. On December 21, 1983, plaintiff requested that Fisher prepare a written statement of the reasons for Mrs. Jackson's termination. Later that day, Fisher told Ms. Alder to refrain from any further action regarding Mrs. Jackson. On the following day, Fisher informed plaintiff that he considered her request for a statement of his reasons for firing Mrs. Jackson an act of insubordination and demanded her resignation. Plaintiff refused to resign. On January 3, 1984, plaintiff again refused to resign and was thereupon told she was dismissed, effective December 22, 1983. Plaintiff requested that Fisher provide her with a written statement of the reasons for her termination. The statement of reasons which was received by plaintiff on February 11, 1984, stated that she had been fired for her act of insubordination and for removing Society documents from the premises. When plaintiff subsequently reviewed her personnel file, she found that it had been altered to include new documents which impugned her character and performance and that documents with which she was familiar had been deleted. Plaintiff's termination by the Society and the statements maintained in the defendants' personnel file interfered with plaintiff's ability to obtain new employment.

On March 12, 1984, plaintiff filed a complaint with the D.C. Office of Human Rights ("OHR"), which alleged that she had been discharged in retaliation for assisting a co-worker who has been the subject of discrimination on the basis of sex, race or age. A "no probable cause" finding, indicating that there was no probable cause to believe that D.C.Code § 1-2525 had been violated by defendants, was issued by OHR on August 8, 1984.[1] Plaintiff

---

**1.** D.C.Code § 1-2525 prohibits coercion, retaliation or interference in connection with the exer-

filed a motion to reconsider this determination with OHR and on November 15, 1984, she was informed that the "no probable cause" determination was upheld on the grounds that plaintiff's actions were not protected under the District of Columbia Human Rights Act ("the Act"). This finding has been interpreted by the plaintiff and District of Columbia as a finding of no jurisdiction. Plaintiff appealed the OHR's findings to the District of Columbia Court of Appeals on December 3, 1984. On August 15, 1985, the District of Columbia moved to remand the case on the grounds that OHR's November 15, 1984 determination that it lacked jurisdiction to consider plaintiff's claim was in error. The Court of Appeals remanded the case to OHR on January 9, 1986. Plaintiff then wrote the Director of OHR requesting information on her options upon remand. On April 29, 1986, the Director of OHR notified Ms. Alder that the election of remedies provision of the Act precluded pursuit of an action at law if plaintiff were to withdraw her complaint from OHR. Plaintiff requested withdrawal of her complaint by letter of May 23, 1986, and the complaint was withdrawn effective June 2, 1986. Plaintiff filed her complaint in this court on November 25, 1986.

ANALYSIS

As grounds for the motion to dismiss, defendants contend that plaintiff's claims under 42 U.S.C. §§ 1981 and 1985(3) are barred by the statute of limitations and the doctrine of collateral estoppel and that plaintiff has failed to state a claim for either corporate or private conspiracy under § 1985(3). Defendants also maintain

cise of the rights protected by the District of Columbia Human Rights Act.

2. Plaintiff's complaint included a claim under D.C.Code § 1-2526, which plaintiff now concedes is barred by the statute of limitations.

3. 42 U.S.C. § 1981 provides that:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and

that plaintiff's claim under § 1-2525 of the D.C.Code is barred by the election of remedies and the statute of limitations. Finally, defendants argue that the District of Columbia has not recognized any exceptions to the doctrine of employment-at-will and therefore plaintiff's claim for wrongful discharge must be dismissed.[2]

1. Claim under 42 U.S.C. § 1981

A. Statute of Limitations

■ Defendants argue that plaintiff's claim under 42 U.S.C. § 1981 should be governed by the District of Columbia's one year statute of limitations, D.C.Code § 12–301(4), rather than the three year period relied upon by plaintiff, D.C.Code § 12–301(8).[3] In support of this position, defendants claim that the injuries plaintiff has alleged are more closely analogous to the intentional torts enumerated under § 12–301(4) than to the more "general" personal injuries governed by § 12–301(8).[4]

In 1973, the D.C. Circuit held that actions under § 1981 are governed by the § 12–301(8) three year limitations period. *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979 (D.C.Cir.1973). Since that time, the circuit has had occasion to reconsider its *Macklin* holding in light of the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed. 2d 254 (1985), which held that for reasons of "uniformity, certainty and the minimization of unnecessary litigation," all claims under 42 U.S.C. § 1983 should be governed by the state statute of limitations applied to tort actions for personal injuries. 471 U.S. at 275–76, 105 S.Ct. at 1947. In *Banks v. Chesapeake & Potomac Tele-*

shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

Actions under both 42 U.S.C. § 1981 and § 1985 are governed by the procedural requirements of § 1988 which establishes that state statutes of limitations be applied to suits under these provisions. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985).

4. D.C.Code § 12–301(4) governs libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest and false imprisonment.

*phone Co.*, 802 F.2d 1416 (D.C.Cir.1986), this circuit held that the reasoning of *Garcia* applied with equal force to claims under § 1981 and that § 1981 claims brought in the District of Columbia should be governed by the personal injury statute of limitations, rather than the one year limitations period applicable to actions brought under the DCHRA. The court also observed that, although the question was not directly before them, actions under § 1981 should be controlled by the District's three year statute of limitations, rather than the § 12–301(4) period of one year. This court finds the reasoning of the *Banks* dicta persuasive and therefore holds that plaintiff's claims under § 1981 are governed by § 12–301(8).[5]

### B. Collateral Estoppel

■ Defendants also contend that plaintiff's claims under § 1981 are barred by the doctrine of collateral estoppel, in that the facts at issue have already been adjudicated by OHR.[6] Defendants find support for this position in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), which found that federal courts addressing claims under the Reconstruction civil rights statutes must give a state agency's factfinding "the same preclusive effect to which it would be entitled in the State's courts." 106 S.Ct. at 3227. *Elliott* specifically held, however, that this rule applies when an agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Id.* (quoting *U.S. v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).

In the present case OHR, the "state agency" in question, was acting not in its judicial capacity, but as an investigative body. The administrative scheme under which plaintiff brought her complaint requires that a complaint be filed first with the Office of Human Rights, which undertakes an investigation and makes an initial determination as to the Office's jurisdiction and whether there is probable cause to believe that the respondent has engaged in prohibited activity. D.C.Code §§ 1–2544, 1–2545. According to representations by counsel at oral argument, the investigative hearing relied upon affidavits from the parties and upon statements not made under oath or maintained in the record. Transcript ("Tr.") at 25. The parties were also unable to cross-examine witnesses. Tr. at 23. These proceedings must be viewed in contrast to those established for hearings before the District of Columbia Commission on Human Rights, which is responsible for making a finding upon the complaint once probable cause has been established and conciliation has failed. D.C.Code §§ 1–2550–2553. Proceedings before the Commission are conducted in accordance with the District's Administrative Procedures Act, D.C.Code §§ 1–1501–1511, which provides for, inter alia, representation by counsel, presentation of rebuttal evidence, cross-examination of witnesses, and maintenance of an official record of the proceedings. Proceedings before the Commission are intended to be adjudicative, while those before OHR provide inadequate opportunity to litigate the factual issues that are at the core of plaintiff's claim.

In addition to the procedural shortcomings of OHR's investigation, collateral estoppel in this case is also precluded by the actions taken by OHR and the District of Columbia Court of Appeals subsequent to OHR's initial finding of no probable cause. Once the Court of Appeals, in response to a request from the District of Columbia, remanded Ms. Alder's case to OHR for further proceedings in light of OHR's prior application of an improper standard in determining that it was without jurisdiction to consider plaintiff's claim, there was, in

---

5. The *Banks* court noted in particular that "[a]llowing the characterization [of claims brought under § 1981] to turn on the particular facts of a case presents the same threat of excessive collateral litigation." 802 F.2d at 1421. The matter currently before this court is exactly this sort of "collateral litigation."

6. Defendants also challenge plaintiff's claims on the grounds that res judicata bars relitigation of Ms. Alder's claims in federal court. This argument fails for the reasons discussed below with respect to collateral estoppel.

the words of Corporation Counsel "no basis, other than speculation, for determining how OHR would resolve the merits [of plaintiff's claim]." Reply by the District of Columbia in Support of Motion to Remand at 2, *Alder v. District of Columbia Office of Human Rights*, No. 84–1619 (D.C. Sept. 4, 1985). Therefore, because OHR's finding of no jurisdiction throws the status of its earlier action into such uncertain light, this court is unwilling to hold that OHR's finding of no probable cause precludes plaintiff from litigating her § 1981 claim in federal court.

2. Plaintiff's claim under 42 U.S.C. § 1985(3)

A. Statute of Limitations

■ Defendants contend that plaintiff's claim under § 1985(3) is also barred by the statute of limitations.[7] In support of this position, defendants cite *Hobson v. Brennan*, 625 F.Supp. 459 (D.D.C.1985), in which Judge Oberdorfer undertakes an exhaustive assessment, in light of *Wilson*, of the Court of Appeals directive in *Hobson v. Wilson*, 737 F.2d 1, 32 n. 99 (D.C.Cir.1984), that § 12–301(8) govern claims under § 1985(3). Defendants argue that application of a three year limitations period to the plaintiff's § 1985(3) claims in *Brennan* was a function of the particular facts of that case which would render application of the one year period inequitable, and that because no such considerations obtain in the present case, this court should interpret *Wilson* to require application of the one year limitations period set out in § 12–301(4). *See* 625 F.Supp. at 468–70. Again, this court is not persuaded by defendants' arguments that the facts of this case warrant deviating from the reasoning

set out in *Wilson*, *Banks* and *Brennan* in support of application of a three year limitation period. *See also Pope v. Bond*, 641 F.Supp. 489, 495 (D.D.C.1986). Judge Oberdorfer's analysis of the difficulties often inherent in bringing a claim for a conspiracy under § 1985(3) and the concern voiced in *Wilson* that the limitations period chosen fairly "serve the federal interests," 625 F.Supp. at 466, quoting *Wilson*, 471 U.S. at 279, 105 S.Ct. at 1948, are compelling reasons to recognize a three year limitation period for plaintiff's § 1985(3) claim. The mere fact that the particular conspiracy alleged in plaintiff's pleadings is relatively simple is no grounds upon which to deviate from this general proposition; to do otherwise would to be to run directly afoul of the Supreme Court's caution regarding fact specific limitation periods. 471 U.S. at 272, 105 S.Ct. at 1944.

B. Collateral Estoppel

Defendants have also raised the issue of collateral estoppel with respect to plaintiff's claim under § 1985(3). For the reasons set out above in the discussion of plaintiff's § 1981 claim, defendant's motion on this point is denied.

C. Adequacy of Conspiracy Claims

■ Defendants maintain that plaintiff has failed to establish a valid conspiracy claim under § 1985(3). First, defendants assert that plaintiff's conspiracy claim must be dismissed because a corporation is incapable of a conspiracy; it must act through its agents and therefore the officers and directors of a corporation cannot be held liable for actions taken in concert. This court agrees generally with the position taken in *Weaver v. Gross*, 605 F.Supp.

---

7. 42 U.S.C. § 1985(3) provides, in relevant part:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection

of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

210 (D.D.C.1985) that "because the general rule of corporate law remains that directors, officers and employees are agents of a corporation and may act on its behalf, they generally should not be held to be conspirators." 605 F.Supp. at 214. However, the more relevant inquiry identified in *Weaver* is whether the actions complained of were taken on behalf of the corporation by those working within the scope of employment or were taken "solely for personal, non-business motivations." *Id.* at 215. In the present case, plaintiff's complaint, when construed in the light most favorable to her as it must be at this juncture, alleges that she believed that two of the corporation's officers had discriminated against Mrs. Jackson on the basis of race and gender, actions which, when undertaken by only a few employees or officers of the corporation, remove them from the protective shield of corporate structure.[8] *Id.*

■ Defendants also argue that plaintiff has failed to allege a class-based animus that would sustain a claim of conspiracy under § 1985(3).[9] In order to make out a claim under § 1985(3), plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Beckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). However, membership in the "target" class is not a prerequisite for invoking the protections of § 1985(3). *Novotny v. Great American Federal Savings & Loan Association*, 584 F.2d 1235, 1245 (3rd Cir.1978) (en banc) *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *See also Weaver*, 605 F.Supp. at 213–14. In the present case, plaintiff has

alleged that she was fired in retaliation for her objection to what she believed was the discriminatory firing of Mrs. Jackson, a black woman. This allegation is sufficient to withstand defendant's motion to dismiss.

■ In addition, because § 1985(3) provides no substantive rights itself, plaintiff must show denial of "the equal protection of the laws, or of equal privileges and immunities under the laws." *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).[10] Plaintiff has claimed that she is protected under § 1981 against retaliation by her employer for her actions in aid of a black woman who she believed had been discriminated against. A white person who is injured as a result of his or her efforts to defend the rights of non-whites has standing to sue under § 1981. *Des Vergnes v. Seekonk Water District*, 601 F.2d 9 (1st Cir.1979), *vacated on other grounds*, 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76 (1981); *Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266 (6th Cir.1977); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir.1975). Rights created under § 1981 are federal rights that may form the basis of a claim under § 1985(3). *Thompson v. International Association of Machinists*, 580 F.Supp. 662 (D.D.C.1984). Therefore plaintiff has stated a colorable claim under § 1985(3).

3. Plaintiff's Claim under D.C.Code § 1–2525

A. Election of Remedies

■ Defendants challenge plaintiff's claim under § 1–2525 of the D.C. Human

---

**8.** At the 12(b) stage, plaintiff's pleadings may be dismissed only where it appears beyond doubt that plaintiff can prove no set of facts entitling him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For this reason, the complaint is to be construed in the light most favorable to the plaintiff. *Shear v. National Rifle Association of America*, 606 F.2d 1251, 1253 (D.C.Cir.1979).

**9.** The court admits to some confusion over plaintiff's specific allegations with regard to this claim, in that the representations of the complaint conflict with those made by plaintiff's counsel at oral argument. Because of the pos-

ture of this case, all apparent contradictions will be resolved in plaintiff's favor.

**10.** In *Novotny*, the Court determined that because Title VII of the Civil Rights Act of 1964 provided its own remedial scheme for deprivation of employment rights, a claim under § 704(a) of that statute could not form the substantive basis for a claim under § 1985(3). 442 U.S. at 378, 99 S.Ct. at 2352. Because the present case does not involve a Title VII claim, the *Novotny* holding does not bar plaintiff's § 1985(3) claim.

Rights Act on the grounds that the election of remedies provision of the Act precludes the initiation of a suit in federal court once OHR has rendered a probable cause finding. In *Brown v. Capitol Hill Club*, 425 A.2d 1309 (D.C.1981), the D.C. Court of Appeals interpreted the D.C. Human Rights Act and associated regulations to ·require that a complainant wishing to retain his or her right to bring a complaint under the Act in court must withdraw any complaint filed with OHR before that office issues its findings. Defendants argue that because OHR issued a finding of "no probable cause" in response to plaintiff's complaint and its subsequent finding of no jurisdiction did not disturb the earlier finding, plaintiff's right to seek redress of her complaint in court has been lost. If the course of plaintiff's complaint had ended with a proper finding of no jurisdiction, defendants might prevail with this argument. In this case however, the status of OHR's initial finding of no probable cause was thrown into question by the August 15, 1985 remand to OHR by the Court of Appeals of the question of OHR's interpretation of § 1–2525. As noted above in the discussion of collateral estoppel, the District of Columbia in support of its motion to remand argued that because of OHR's incorrect finding of no jurisdiction, OHR had not properly reconsidered the merits of plaintiff's claim and the conclusion it would reach once it did so was an open question. Because of this uncertainty as to the viability of OHR's initial finding, this court finds plaintiff has not had a finding on the merits of her claim adequate to invoke the election of remedies bar to the present suit.

### B. Statute of Limitations

■ Defendants argue that even if the election of remedies provision does not foreclose a suit before this court, such action is barred by the one year statute of limitations for suits under the D.C. Human Rights Act. *See Davis v. Potomac Electric Power Company*, 449 A.2d 278 (D.C. 1982). This argument is unpersuasive. In a portion of *Blake v. American College of Obstetricians & Gynecologists*, 608 F.Supp. 1239 (D.D.C.1985), not overruled

by the court of appeals decision in *Banks*, 802 F.2d 1416, Judge Harris found that the statute of limitations is tolled during the pendency of an action before OHR. Under this analysis, plaintiff's action before this court is timely and will not be dismissed.

### 4. Wrongful Discharge

■ Finally, plaintiff maintains that she is entitled to pursue a claim for wrongful discharge in violation of public policy on the theory that defendants terminated her in direct contravention of the District of Columbia's clearly expressed policy against race and gender-based discrimination. Defendants argue that this claim should be dismissed because the District of Columbia courts have not yet recognized any exceptions to the common law doctrine of employment at will. In support of their position, defendants point to *Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C. 1981) (en banc), in which the court denied a petition for a rehearing en banc of a panel decision which held that there was no cause of action for wrongful discharge in the District of Columbia. The court in *Parker v. National Corporation for Housing Partnerships*, 619 F.Supp. 1061 (D.D.C. 1985), *reversed on other grounds*, No. 85–5985, slip op. (D.C.Cir. June 2, 1987), apparently relied on *Ivy* in finding that there was no cause of action for wrongful discharge under D.C. law. 619 F.Supp. at 1067–68.

Plaintiff contends that *Ivy* is no longer good law and that this court should find that if faced with the particular facts of this case today, the District of Columbia would acknowledge a claim for wrongful discharge. In *Newman v. Legal Services Corporation*, 628 F.Supp. 535 (D.D.C. 1986), Judge Flannery reviewed the opinions of the judges who dissented in the *Ivy* decision and undertook a thorough survey of the evolving doctrine of wrongful discharge before concluding that "the District of Columbia would recognize a public policy exception to the at-will employment doctrine." 628 F.Supp. at 539. The more recent case of *Wemhoff v. Investors Management Corporation of America*, 528 A.2d 1205 (D.C.1987) lends considerable support

to the *Newman* holding insofar as the court clearly implied that under the proper circumstances it would inquire as to whether a discharge violated "some statutorily declared public policy" and thereby was an exception to the general employment-at-will rule. 528 A.2d at 1208 n. 3, quoting *Ivy*, 428 A.2d at 835 n. 9 (Ferren, J., dissenting). Because of this apparent willingness of the D.C. Court of Appeals to recognize that certain discharges may, in fact, fall outside of the cloak of protection given employers by the employment-at-will-doctrine and because plaintiff's claims, if proven, would appear to implicate a statutorily expressed public policy, defendants' motion to dismiss the wrongful discharge claim is denied.

CONCLUSION

Therefore, for the reasons set out above, defendants' motion to dismiss is denied.