**Louis G. BUTTELL, Plaintiff,**

v.

**AMERICAN PODIATRIC MEDICAL ASSOCIATION, et al., Defendants.**

**Civ. A. No. 87–1860.**

United States District Court, District of Columbia.

Dec. 1, 1988.

Neil B. Katz, Richard McKernon, Rockville, Md., for plaintiff.

Werner Strupp, Robert J. Strupp, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiff Louis G. Buttell ("Buttell") filed the instant complaint[1] on July 9, 1987 alleging violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and asserting several state law claims as a result of his termination from employment as Director of Public Affairs at the American Podiatric Medical Association ("APMA") in September 1986. Named as defendants in the complaint are the APMA, Norman Klombers ("Klombers"), Executive Director of the APMA, and the members of the Board of Trustees of the APMA ("the Board")[2]. The matter is presently before the Court on defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is denied.

## I. BACKGROUND

Plaintiff was hired by the APMA in July 1967 as the Director of Public Affairs. His duties included responsibility for the total communications programs for the APMA, including public relations, media relations, liaison with State Podiatric Societies, and publications. He supervised a staff of six (6), and reported to the Executive Director. From 1967 until 1986, plaintiff received no formal performance evaluations, although he typically would receive an annual bonus and salary increase at the end of each year.

In early May, 1986, Klombers, plaintiff's direct supervisor, warned plaintiff that the Board of Trustees was not satisfied with his performance and that he was to be evaluated in three months, at which time Klombers would determine whether to retain plaintiff. At that time, the APMA contracted with Peat, Marwick, an outside consulting agency, to conduct a management review of the APMA staff. The Peat, Marwick task force ultimately filed a report which was critical of plaintiff.

In September, 1986, plaintiff was fired for "performance related reasons." Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Opp."), at 2. He was fifty-nine (59) years of age. He was replaced by a younger employee, Dean Wakefield, who was fifty-six (56) years of age. *Id.* After his termination, plaintiff requested a review of the termination by the Board of Trustees, pursuant to APMA's policies, as set forth in APMA's employee handbook of personnel policies. The Board denied plaintiff's request for a hearing and instead issued a statement that "the procedures" were followed. Plaintiff asserts he was never afforded a review of the merits of his termination nor was he given an opportunity to present his case to the Board. Complaint, at 7.

Plaintiff further alleges that beginning in September 1984 Klombers engaged in a pattern of misconduct calculated to have plaintiff fired. Buttell claims that Klombers put him in embarrassing positions by requiring him to perform tasks that he would not likely be able to complete. He contends that Klombers made misrepresentations to the Board of Trustees and the outside consulting firm regarding plaintiff's job performance. He also alleges that Klombers created erroneous records, altered memoranda, and generated inaccurate minutes of executive committee conferences, all in an attempt to discredit plaintiff and ensure that he be terminated. *Id.* at 3. This "misconduct" was brought to the attention of the Board of Trustees,

---

1. Plaintiff dismissed Count IV of his original complaint, for defamation, on February 23, 1988. On February 26, 1988, plaintiff filed an amended complaint adding a new Count IV which alleged breach of the covenant of good faith and fair dealing.

2. Defendant Dr. Kove J. Schwartz, a member of the Board of Trustees, was dismissed by stipulation of the parties, approved by the Court, on February 16, 1988.

which nevertheless affirmed Klombers' decision to terminate plaintiff.

Plaintiff maintains that his termination was discriminatory, based on age, in violation of the ADEA. He also asserts state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate when there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56. "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986).

### B. *Count I—Age Discrimination*

Defendants have moved for summary judgment as to Count I on the ground that plaintiff has failed to produce any evidence, direct or circumstantial, necessary to establish a prima facie case of age discrimination. In the alternative, defendants argue that they have met their burden of coming forward with a legitimate, non-discriminatory reason for their decision to terminate plaintiff and plaintiff has failed to present facts showing that this reason was pretextual, i.e., plaintiff has not shown that he was fired because of his age. While the plaintiff's evidence is somewhat weak, the Court concludes that plaintiff has presented genuine issues of material fact sufficient to overcome defendants' motion.

■ In cases brought under the ADEA, the allocation of evidentiary burdens is equivalent to those that have been established in Title VII discrimination cases. *See Skelton v. Action,* 668 F.Supp. 25, 28 (D.D.C.1987); *Cuddy v. Carmen,* 762 F.2d 119, 122 (D.C.Cir.1985). In termination cases the plaintiff must first present a prima facie case of age discrimination by showing that (1) he belongs to the group protected by the relevant statute (here the group of persons between ages 40 and 70); (2) the plaintiff was qualified for the position in question; (3) the plaintiff was terminated; and (4) a person not of the protected group was selected. *See Skelton,* 668 F.Supp. at 28; *Cuddy,* 762 F.2d at 122; *Krodel v. Young,* 748 F.2d 701, 706 (D.C. Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.1983). Once a plaintiff has accomplished this, the burden then shifts to the defendant to rebut the resulting presumption of discrimination. *Skelton,* 668 F.Supp. at 28. To do so, a defendant must produce evidence "that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 28, *quoting Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If this burden of production is satisfied, the plaintiff must then prove his case "either indirectly by showing that the reason proffered by the defendant was in fact a pretext or directly by showing that it was more likely than not that the defendant was actually motivated by discrimination." *Skelton,* 668 F.Supp. at 28, *quoting Cuddy,* 762 F.2d at 123. Therefore, plaintiff ultimately bears the burden of proving that age was a "determining factor" in the termination, and that "but for" the employer's discriminatory motive, he would not have been fired. *See Skelton,* 668 F.Supp. at 28–29.

In *Skelton,* 668 F.Supp. 25, the Court summarized the burden placed on a plain-

tiff in an age discrimination case in order to defeat a motion for summary judgment:

> In an age discrimination case, the Court's teachings mean that, once the defendant has moved for summary judgment by producing evidence that there existed legitimate, nondiscriminatory reasons for the plaintiff's nonselection, the plaintiff must then demonstrate the existence of material facts indicating that the reasons proffered by the defendant are merely pretextual or that the defendant was in fact motivated by a discriminatory motive. Failure to produce such evidence at the summary judgment stage entitles the defendant to judgment.

668 F.Supp. at 29 (citations omitted).

■ Plaintiff cannot sustain his burden of establishing discriminatory motive merely by showing, without more, that he was better qualified than the person who replaced him. Unless the employer's decision to fire the plaintiff is shown to be tainted by unlawful discrimination, it must be allowed to stand, even if it appears to be unwise. *See id.* at 27. Furthermore, it is not enough for plaintiff to show a mere "scintilla" of evidence to create a genuine issue of fact. There must be sufficient evidence of record to support a finding that the reasons proffered by defendant are pretextual. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

It is with these standards and principles in mind, that the Court turns to the instant case. A careful review of the record reflects sufficient facts in support of plaintiff's claim that his termination was based on age. Although plaintiff may not ultimately prevail at trial (and the case presented here is not overwhelming), he has, nonetheless, raised issues of material fact sufficient to defeat summary judgment.

Of the four elements necessary to establish a prima facie case of age discrimination, only the second (plaintiff was "qualified") and fourth (plaintiff was replaced by someone not in the protected group) are at issue in this case. As to the second element, defendants assert that Buttell was not qualified to continue as Director of Public Affairs. In making this assertion, defendants argue that only Klombers' assessment of plaintiff's performance is relevant; plaintiff's own assessment has no bearing whatsoever.

■ In order to support the prima facie case requirement that plaintiff is "qualified", plaintiff must show that he met his employer's legitimate expectations. *Smith v. Chamber of Commerce of United States,* 645 F.Supp. 604, 607 (D.D.C.1986). Buttell challenges the evaluations of his work performance based in large part on his own perceptions. He also relies on his nineteen years of service at APMA, with annual bonus and salary increases, as evidence of his continued "qualification".

■ Although it is the perception of the decisionmaker, rather than the employee, which is relevant, *id.* at 608; *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980); *McDaniel v. Mead Corp.,* 622 F.Supp. 351, 360 (D.C.Va.1985), the Court notes that the basis for defendants' determination that plaintiff was *not* qualified is ambiguous at best. Klombers testified at deposition as to plaintiff's qualifications. He stated that

> it was obvious to me as Executive Director that Mr. Buttell's performance was not meeting with my expectations, and that occurred fairly early on. Not in all respects ... I cannot say that I am dealing with someone who was grossly deficient ... But, there were important issues ... critical responsibilities and performance levels that were obviously not there.

Klombers Dep., p. 49, lines 11–19. Donald Skwor, a member of the Board of Trustees, testified at deposition that Klombers was not pleased with Buttell's performance. When asked what the specific reasons were, Skwor answered, "I don't recall anything other than a lack of creativity and initiative and words like that." Skwor Dep., p. 46, lines 4–6. Although a reasonable jury could conclude that these vague, unspecific justifications were benign, a reasonable jury could also conclude that defendants harbored animus for plaintiff based on his age and that their stated reasons were pretextual. At this juncture,

the Court can not conclude, as a matter of law, that plaintiff was not "qualified" to remain as Director of Public Affairs.

Defendants also argue that plaintiff cannot establish the fourth element of his prima facie case of age discrimination because plaintiff was replaced by someone who was also in the protected age group. Plaintiff admits that he was replaced by Dean Wakefield, who was 56 years old. Nevertheless, plaintiff argues that a discharged employee need not be replaced by a person under 40 in order to recover in an age discrimination case. Although defendants concede that in certain cases this may be true, they argue that the facts of this case and the relevant case law in the District of Columbia necessitate a conclusion that plaintiff has not met the fourth requirement in support of a prima facie case. The Court disagrees.

■ Although the fact that an employee is replaced by a significantly younger one could be probative of discriminatory intent, it is also clear that the fact that a replacement is in the protected age group does not, in and of itself, preclude a plaintiff from establishing a prima facie case of age discrimination. *See McCorstin v. United States Steel Corp.*, 621 F.2d 749, 754 (5th Cir.1980); *Maxfield v. Sinclair International*, 766 F.2d 788, 792 (3rd Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986) (and cases cited therein). Indeed, in *Obitko v. Ohio Barge Line, Inc.*, 628 F.Supp. 62 (W.D.Pa.1986), cited by plaintiff, the court found that a 57 year-old employee who was discharged and replaced by a 58 year-old employee was able to make a prima facie case of age discrimination. Considering the other relevant circumstances of this case, the fact that Buttell was replaced by Whitehead, age 56, will not, as a matter of law, preclude him from making his prima facie case.

Plaintiff has attached documentation to show that defendants would save $62,730.00 over a six year period by firing Buttell. Opp. Exhibit A. Plaintiff has also shown that certain documents were altered by defendants. Opp. Exhibits B, C. While there may be a reasonable, legitimate business explanation, the motive behind such alteration is uncertain at this time. Defendants do not deny that the alteration occurred. However, while stating that "[t]he record does.... suggest that a rewrite of a particular memorandum was requested", Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Reply"), at 17, defendants argue that the facts concerning the incident are immaterial to the termination of plaintiff. See Defendants' Motion for Summary Judgment, at 18; Reply, at 2. Although this evidence may prove insufficient at trial to establish age discrimination, plaintiff has nonetheless articulated facts sufficient to overcome defendants' motion for summary judgment.

■ Defendants also argue that plaintiff's claim of age discrimination against the corporate directors must be dismissed because plaintiff has failed to show that they played a dominant role in the decision to terminate plaintiff. Both parties rely on a decision from the Maryland Court of Special Appeals where it was stated that

an "officer" of a corporation or other business entity who plays a dominant role in the affairs of the corporate employer and who primarily formulated the corporation's decision to fire a particular employee.... should [not] be permitted to take refuge behind the corporate veil in order to insulate himself....

*Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212, 218 (1985). Although plaintiff merely asserts that the Board of Trustees "concurred" in Klombers' decision to fire plaintiff, there is evidence suggesting that the Board members did play more than the insignificant role in the decision to terminate plaintiff that defendants suggest. Several Board members admit that they had a duty to supervise Klombers, the Executive Director. Schwartz Dep., at 131; Lanham Dep. at 11; Stone Dep. at 10. Plaintiff suggests that the Board members were aware of the allegation that Klombers altered the memorandum. Plaintiff also claims that the Board attempted to revise the employee handbook and altered execu-

tive committee minutes in an attempt to deny plaintiff a hearing. See Opp., Exhibit C. Plaintiff further alleges that the Board was aware of the substantial pension costs it would save were plaintiff terminated. The record is unclear as to how much consideration was given to Klombers' recommendation and the extent of the discussion, if any, among the Trustees, which resulted in the decision to terminate plaintiff. Plaintiff's claims do raise genuine issues as to whether any or all of the Board members possessed discriminatory motive when they affirmed Klombers' recommendation to fire plaintiff.

Although plaintiff's evidence may indeed prove insufficient at trial as defendants vehemently argue, plaintiff has established genuine issues of material fact sufficient to overcome summary judgment. Therefore, defendants' motion as to Count I is denied.

## C. Counts II, III, and IV

### 1. Pendent Jurisdiction

In Counts II, III, and IV, plaintiff asserts state law claims of breach of contract and breach of the covenant of good faith and fair dealing based on defendant's failure to comply with the stated policies of the APMA employee handbook of personnel policies (Complaint, Exhibit A). Plaintiff maintains that there were improprieties in the evaluation process and that he was denied a review of his termination by the Board of Trustees. In addition, he alleges that Klombers directed an APMA employee to alter and falsify certain memoranda in order to make it appear that plaintiff had not performed his duties satisfactorily. These actions were brought to the attention of the full Board of Trustees, who nevertheless supported Klombers' decision to terminate plaintiff.

■ Plaintiff, in his complaint, asserts federal jurisdiction over these claims based solely on diversity of citizenship. Yet plaintiff admits that diversity is not complete between plaintiff and all defendants. Complaint, at 3. Both plaintiff and defendant Klombers are residents of the state of Maryland. Therefore, federal jurisdiction cannot be based on diversity. See Owen

*Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed. 2d 274 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff."). If this Court has jurisdiction over these remaining counts, it must be based on this Court's exercise of pendent jurisdiction.

■ The Supreme Court's decision in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) establishes a two-part test of whether a federal court should exercise pendent jurisdiction over a state law claim. First, the court must have power under article III to adjudicate the pendent claim. Such power exists when a plaintiff presents a sufficiently substantial federal claim and the plaintiff's federal and local claims derive from a common nucleus of operative facts and would ordinarily be tried in a single proceeding. If such power is found to exist, the Court must then determine whether or not to exercise its discretion to decide the local claim. *Id.* at 726, 86 S.Ct. at 1139.

> To say, however, that there is *power* to hear the pendent claim is not to say that the court *must* hear it. On the contrary, '[i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants.'

*Prakash v. American University,* 727 F.2d 1174, 1182 (D.C.Cir.1984), *quoting United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 (emphasis in original). A District Court must also consider whether a complaint poses novel and difficult questions of state law. *Dimond v. District of Columbia,* 792 F.2d 179, 189 (D.C.Cir. 1986).

■ Clearly, Buttell's federal and state claims are based on the same operative set of facts. Furthermore, Buttell's state law claims do not present any novel or difficult questions of state law which would warrant dismissal by this Court. Upon careful considerations of judicial economy, convenience, and fairness to the litigants, the

Court decides to exercise pendent jurisdiction over counts II, III, and IV.

Having decided to exercise pendent jurisdiction over counts II, III, and IV, the Court now turns to defendants' motion for summary judgment as to these claims.

### 2. *Count II*

 In Count II, plaintiff alleges breach of contract based on the APMA employee handbook of personnel policies, which provides for annual performance evaluations and salary reviews (Complaint, Exhibit A, p. 6) and a "right of review" of termination by the Executive Committee of the Board of Trustees (Complaint, Exhibit A, at 8). As to plaintiff's first allegation, defendants maintain that there was an informal process of performance evaluation. The employee handbook is silent as to the type of performance evaluation that is required. The relevant portion of the handbook states merely that "Job evaluations and salary reviews will be completed by Department Heads on an annual basis." Complaint, Exhibit A, p. 6. However, since plaintiff claims that the handbook entitles him to *formal* evaluations, there is a genuine issue in dispute as to whether the informal process satisfies the provisions of the handbook. Similarly, as to plaintiff's second allegation, there is a genuine issue in dispute as to whether or not the "right of review" referred to in the employee handbook entitles plaintiff to a hearing before the Board of Trustees. Defendants admit that a prior employee had been granted a hearing as part of his "review". Reply, at 3. Although defendants deny that the prior hearing was on the merits, a genuine issue still exists as to whether plaintiff was entitled to a similar, or possibly more extensive, hearing in accordance with the handbook provisions. Defendants' motion for summary judgment as to count II must therefore be denied.

### 3. *Count III*

 In Count III, plaintiff alleges that defendants breached their agreement to evaluate plaintiff over a three month period to include May, June, and July of 1986. Plaintiff claims that the evaluation improperly considered plaintiff's performance for several years rather than the agreed upon three months. The basis of the alleged agreement is a letter from Klombers to Buttell on June 5, 1986, attached as Exhibit B to plaintiff's complaint. The relevant portion reads

> The subject of your performance as a staff member was first discussed with you some time during the first week of May 1986. You were advised at that time that your performance would be evaluated in three months. Specifically, a written statement will be provided to you during the first week of August 1986.

While defendants reject plaintiff's interpretation of the "in three months" language, the Court notes that Donald Skwor, a member of the Board of Trustees, testified at deposition that he was aware that Buttell was being evaluated "for that three-month period." Skwor Dep. p. 54, lines 21–22. A reasonable jury could conclude, based on the evidence presented by plaintiff, that the evaluation should have been limited only to the three-month period. Therefore, defendants' motion as to Count III is denied.

### 4. *Count IV*

 In Count IV, plaintiff alleges a breach of the implied covenant of good faith and fair dealing based on Klombers' tampering with the memorandum, the failure of defendants' to honor its obligation to afford plaintiff his right of review, and the attempt by defendants to change the scope of review after plaintiff requested a review. Defendants maintain that no such implied covenant existed between the parties because Buttell was an employee "at will", entitling defendants to terminate him for any lawful reason, or no reason at all.

The employee handbook, upon which plaintiff relies in maintaining that an implied covenant existed, unambiguously allows for termination of employees with or without cause. Complaint, Exhibit B, at 7–8. Plaintiff has not asserted and there is no evidence in the record that his employment contract with APMA was for a fixed

period of time[3]. The general rule in the District of Columbia is that an employment contract is terminable at will unless it is for a specified term. *Newman v. Legal Services Corp.*, 628 F.Supp. 535, 538 (D.D.C. 1986). Employment contracts of indefinite duration are terminable by the employer or employee at will with no ensuing liability on the part of either. *Parker v. National Corp. for Housing Partnerships*, 619 F.Supp. 1061, 1067 (D.D.C.1985), *rev'd on other grounds*, 46 FEP Cases 1638, No. 85–5985, slip op. (D.C.Cir. June 2, 1987).

Under the common law doctrine of "employment at will", followed in the District of Columbia, no cause of action will lie for wrongful discharge of an employee subject to termination at will. *Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C. 1961); *see also Ivy v. Army Times Publishing Co.*, 428 A.2d 831 (D.C.1981).

Plaintiff urges this Court to find that the District of Columbia has recognized a "public policy exception" to the employment at will rule similar to the decision of the District Court for the District of Columbia in *Alder v. Columbia Historical Society*, 690 F.Supp. 9 (1988). In *Alder*, plaintiff claimed she was entitled to sue her employer for wrongful discharge in violation of public policy on the theory that defendants terminated her in direct contravention of the District of Columbia's clearly expressed policy against race and gender-based discrimination. Defendants argued that the District of Columbia had not yet recognized any exceptions to the common law rule of employment at will. After reviewing the

recent case law in the District of Columbia[4], Judge Bryant stated that

[b]ecause of this apparent willingness of the D.C. Court of Appeals to recognize that certain discharges may, in fact, fall outside of the cloak of protection given employers by the employment-at-will-doctrine and because plaintiff's claims, if proven, would appear to implicate a statutorily expressed public policy, defendant's motion to dismiss the wrongful discharge claim is denied.

690 F.Supp. at 17.

This Court agrees that an exception to the employment-at-will doctrine does exist in the District of Columbia for violations of clear mandates of public policy. *See Newman*, 628 F.Supp. at 539. In the instant case, Buttell's claim of breach of the implied covenant of good faith and fair dealing, if proven, would implicate the statutorily expressed public policy of the District of Columbia against discrimination based on age. Discrimination based on age, like discrimination based on race or gender, is a violation of the clear mandates of public policy. Therefore, although Buttell's employment with APMA appears to be "at will", his claim is not barred by the employment-at-will doctrine. Accordingly, defendants' motion for summary judgment as to count IV must be denied.

## III. CONCLUSION

For the reasons set forth above, it is accordingly hereby

---

3. This case is therefore distinguishable from *Eller v. Houston's Restaurant, Inc.*, 35 F.E.P. 1801 (D.D.C.1984) where defendant's motion for summary judgment was denied because there were genuine issues of material fact in dispute as to whether the employment contract was terminable at will rather than only for cause. In that case, despite the language of the signed employment contract indicating that the contract was terminable at will, plaintiff claimed that the parties intended that she could only be fired for failure to meet defendant's standards of quality. Plaintiff has made no such allegation in the instant case.

4. Of critical importance to the court was Judge Flannery's opinion in *Newman v. Legal Services*

*Corporation*, 628 F.Supp. 535 (D.D.C.1986) in which he concluded after careful consideration of the relevant D.C. case law, including *Ivy* and *Taylor*, and the evolving doctrine of wrongful discharge that "the District of Columbia would recognize a public policy exception to the at-will employment doctrine." 628 F.Supp. at 539.

The court also relied on *Wemhoff v. Investors Management Corporation of America*, 528 A.2d 1205 (D.C.1987) where the court "clearly implied that under the proper circumstances it would inquire as to whether a discharge violated 'some statutorily declared public policy' and thereby was an exception to the general employment-at-will rule." 690 F.Supp. at 17.

ORDERED that defendants' motion for summary judgment as to Counts I, II, III, and IV is denied. It is

FURTHER ORDERED that the counsel for all parties shall appear for a status/settlement conference on Thursday, December 15, 1988, at 9:30 a.m., at which time they shall bring with them maximum authority to settle this case. Absent settlement, this case shall then be scheduled for a pretrial conference and trial.

IT IS SO ORDERED.